## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TONY DEWAYNE BEARD, JR.,
a legally incapacitated individual,
by and through JOHNETTE FORD,
his guardian,

Case No. 14-13465
Honorable Nancy G. Edmunds
Magistrate Elizabeth A. Stafford

Plaintiffs,

v.

CITY OF SOUTHFIELD, and Police
Officers JEFFREY JAGIELSKI,
JASON SCHNEIDER, KATIE SCHNEIDER,
ERIC JACHYM, TIMOTHY GOUGEON,
MATTHEW TAYLOR, RYAN LOSH,
BLAKE MATATALL, NICHOLAS SMISCIK,
and KORY KARPINSKY,

Defendants.

LAW OFFICE OF J.L. HAWKINS PLLC
By:  Johnny L. Hawkins (P48157)
2000 Town Center, Suite 1900
Southfield, Michigan 48075
P: (248) 819-2500
F: (248) 436-6833
E: johnny@jlhawkinslaw.com
Attorney for Plaintiffs

SEWARD PECK & HENDERSON PLLC
By: T. Joseph Seward (P35095)
   Kali M. L. Henderson (P76479)
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
E: jseward@sph-pllc.com
E: khenderson@sph-pllc.com
Attorneys for Defendants

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. # 118]

**NOW COMES** the above named Plaintiff, by and through his attorney, the LAW OFFICE OF J.L. HAWKINS, PLLC, in specific, JOHNNY L. HAWKINS, and pursuant to Fed. R. Civ. P 56(e)(2) and LR 7.1(g) and provides the following response.  In support of its response asking the court to deny in whole or part, the Defendants' motion for partial summary judgment, Plaintiff relies upon the attached brief.

Respectfully Submitted,

LAW OFFICE OF J.L. HAWKINS, PLLC

By:   /s/ Johnny L. Hawkins
      Johnny L. Hawkins (P48157)
      Attorney for Plaintiff
      2000 Town Center, Ste 1900
      Southfield, Michigan  48075
      Tel:   (248) 819-2500
      Fax:  (248) 436-6833
      Email: Johnny@JLHawkinsLaw.com

Dated:      June 27, 2016

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TONY DEWAYNE BEARD, JR.,
a legally incapacitated individual,
by and through JOHNETTE FORD,
his guardian,

        Plaintiffs,

v.

CITY OF SOUTHFIELD, and Police
Officers JEFFREY JAGIELSKI,
JASON SCHNEIDER, KATIE SCHNEIDER,
ERIC JACHYM, TIMOTHY GOUGEON,
MATTHEW TAYLOR, RYAN LOSH,
BLAKE MATATALL, NICHOLAS SMISCIK,
and KORY KARPINSKY,

        Defendants.

Case No. 14-13465

Hon. Nancy G. Edmonds

Magistrate Elizabeth A. Stafford

---

LAW OFFICE OF J.L. HAWKINS PLLC
By:   Johnny L. Hawkins (P48157)
2000 Town Center, Suite 1900
Southfield, Michigan 48075
P: (248) 819-2500
F: (248) 436-6833
E: johnny@jlhawkinslaw.com
Attorney for Plaintiffs

SEWARD PECK & HENDERSON PLLC
By: T. Joseph Seward (P35095)
    Kali M. L. Henderson (P76479)
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
E: jseward@sph-pllc.com
E: khenderson@sph-pllc.com
Attorneys for Defendants

---

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

Issue Statements ……………………………………………………………i

Index of Authorities………………………………………………………iv

Plaintiff's List of Exhibits…………………………………………………...vi

Introduction…………………………………………………………………1

Counter-Statement of Facts…………………………………………………2

Standard of Review……………………………………………………..24

Law and Analysis………………………………………………………..25

I.    INDIVIDUAL DEFENDANTS, ACTING UNDER COLOR OF LAW, ARE NOT ENTITLED TO QUALIFIED IMMUNITY OR ANY OTHER IMMUNITIES WHEN THEIR ACTIONS RESULT IN AN UNLAWFUL SEIZURE OF A U.S. CITIZEN THAT IS IN DIRECT VIOLATION OF SAID U.S. CITIZEN'S FOURTH AMENDMENT RIGHT, AS ESTABLISHED UNDER THE U.S. CONSTITUTION DUE TO SAID DEFENDANTS WRONGFULLY ENGAGING WITH SAID  CITIZEN WITHOUT THERE FIRST BEING ESTABLISHED, EITHER A REASONABLE SUSPICION THAT CRIME WAS AFOOT AND/OR PROBABLE CAUSE, AS RECOGNIZED BY LAW, AT EITHER THE STATE OR FEDERAL LEVEL…………………………………………………………………25

II.    INDIVIDUAL DEFENDANTS, ACTING UNDER COLOR OF LAW, ARE NOT ENTITLED TO QUALIFIED IMMUNITY OR ANY OTHER IMMUNITIES WHEN THEIR ACTIONS RESULT IN THE "USE OF EXCESSIVE FORCE" AGAINST A U.S. CITIZEN THAT IS IN DIRECT VIOLATION OF SAID U.S. CITIZEN'S FOURTH AMENDMENT RIGHT TO BE FREE FROM THE THREAT OF SAME…………………………….31

III.   DEFENDANTS ARE CORRECT THAT INDIVIDUALS ACTING UNDER COLOR OF LAW, ARE ENTITLED TO QUALIFIED IMMUNITY EVEN WHEN THEIR ACTIONS RESULT IN THE USE OF CRUEL AND UNUSUAL PUNISHMENT ASSERTED AGAINST AN INDIVIDUAL THAT HAS NOT FORMALLY OBTAINED THE LEGAL STATUS OF "PRISONER."................................................................................. 41

IV.   INDIVIDUAL DEFENDANTS, ACTING UNDER COLOR OF LAW, ARE NOT ENTITLED TO QUALIFIED IMMUNITY OR ANY OTHER IMMUNITIES WHEN THEIR ACTIONS VIOLATE THOSE SPECIFIC RIGHTS AFFORDED ALL U.S. CITIZENS, AS PRESCRIBED UNDER THE EQUAL PROTECTION CLAUSE OF THE U.S. CONSTITUTION ............................................................................. 42

V.   INDIVIDUAL DEFENDANTS, ACTING UNDER COLOR OF LAW, ARE NOT ENTITLED TO QUALIFIED IMMUNITY OR ANY OTHER IMMUNITIES WHEN THEIR ACTIONS VIOLATE THOSE SPECIFIC RIGHTS AFFORDED ALL U.S. CITIZENS, AS PRESCRIBED UNDER THE SUBSTANTIVE DUE PROCESS CLAUSE OF THE U.S. CONSTITUTION ..........................................................................46

VI.   INDIVIDUAL DEFENDANTS, ACTING UNDER COLOR OF LAW, ARE NOT ENTITLED TO QUALIFIED IMMUNITY OR ANY OTHER IMMUNITIES WHEN THEIR ACTION RESULTS IN "DELIBERATE INDIFFERENCE" TOWARDS A U.S. CITIZEN.................................48

VII.   INDIVIDUALLY NAMED DEFENDANT -MUNICIPALITIES ARE NOT ENTITLED TO SUMMARY JUDGMENT WHERE IT CAN BE PROVEN THAT IT HAS  ESTABLISHED A LONGSTANDING PRACTICE OR CUSTOM THAT VIOLATES AND/OR INFRINGES UPON THE CONSTITUTIONAL RIGHTS OF ANY U.S. CITIZEN AS A DIRECT RESULT OF ITS FAILURE TO TRAIN AND/OR ESTABLISH A WRITTEN POLICY FOR ITS EMPLOYEES THAT WOULD HAVE KNOWINGLY PREVENTED A U.S. CONSTITUTIONAL VIOLATION......................52

VIII. DEFENDANT'S ARE CORRECT THAT INDIVIDUALLY NAMED DEFENDANT-MUNICIPALITIES ARE ENTITLED TO SUMMARY JUDGMENT SINCE IT CANNOT BE PROVEN THAT THERE IS A LONGSTANDING PRACTICE OR CUSTOM THAT VIOLATES AND/OR INFRINGES UPON THE CONSTITUTIONAL RIGHTS OF ANY U.S.

CITIZEN AS A DIRECT RESULT OF ITS FAILURE TO SUPERVISE ITS EMPLOYEES...............................................................................60

Conclusion.................................................................................61

Certificate of Service...............................................................62

# <u>INDEX OF AUTHORITIES</u>

**Cases:**

Braley v City of Pontiac, 906 F.2d 220, 226 (6th Cir. 1990)………. 47, 48

Burgess v. Fischer, 735 F.3d 462, 475-76 (6th Cir. 2013)………… 35, 39, 40

Cnty. of Sacramento v Lewis, 523 U.S. 833, 846-47 (1998)………..47

Farm Labor Org. Comm. V Ohio State Highway Patrol, 308 F.3d 523 (6th Cir. 2002)…………………………………………………44

Gardenhire v Schubert, 205 F.3d 303, 318 (6th Cir. 2000)…………..44

Graham v Connor, 490 U.S. 386, 109 S. Ct. 1865, 104 L.Ed 2nd 443 (1989)………………………………………………………48

Hardesty v City of Ecorse, 623 F. Supp. 2d 855 (6th Cir. 2009)…….30

Heck v  Humphrey, 512 U.S. 477 (1994)………………………………25

Miller v Calhoun Cnty., 408 F.3d 803, 813 (6th Cir. 2005)…………..50

Monnell v Dep't of Social Servs, 436 U.S. 658, 690-91 (1978)……55, 60

Napier v Madison Cnty., 238 F.3d 739, 742  (6th Cir. 2001)…………48

Ontha v Rutherford Cnty., 222 Fed Apps. 498 (6th Cir. 2007)………..35, 39

Range v Douglas, 763 F.3d 573, 588 (6th Cir. 2014)…………………47

Ridgeway v Union County Comm'rs, 775 F. Supp 1105 (1991)…….24

Rochin v California, 342 U.S. 165, 172-273 (1952)…………………47, 48

Taylor v City of Falmouth, 187 Fed. Appx 596, 601 (6th Cir. 2006)…44

U.S. v Cohen, 2006 U.S. Dist. LEXIS 6581…………….…………..27

Villegas v Metro. Gov't of Nashville, 709 F.3d 563, 568
(6th Cir 2013)………………………………………………………….…49


**Federal Statutes:**

42 USC 1983 …………………3, 25, 26, 31, 33, 35, 36, 38, 39, 40, 41, 57

**State of Michigan Statutes:**

MCL 762.3 ………………………………………………………...29

MCL 762.4 …………………………………………………………29

MCL 764.2a ……………………………………………………2, 29, 53,
56

**Federal Court Rules:**

Fed R. Civ. P 56(a) ……………………………………………2, 56, 59

Fed R. Civ. P 56(c) …………………………………………24, 59

**U.S. Constitution Provisions:**

Fourth Amendment ……………………………3, 25, 31, 33 ,35, 36, 38, 39,
60

Fourteenth Amendment …………………………………………...3,42,46

Eighth Amendment …………………………………………………41

## **PLAINTIFF'S LIST OF EXHIBITS**

1.   Copy of STATE OF MICHIGAN TRAFFIC CRASH REPORT, prepared by DPD, P.O. R. Crenshaw, on 9/6/2011;

2.   Copy of Michigan Compiled Laws 764.2a;

3.   Copy of Michigan Registration and Proof of Insurance for 2009 Chevy Tahoe owned by Plaintiff, Tony D. Beard, Jr., on 9/6/2011;

4.   Copy of Discovery Deposition Transcript for Plaintiff, Tony De. Beard, Jr., completed on 12/3/2015;

5.   Copy of Discovery Deposition Transcript for Co-Defendant, Jason Schneider, completed on 3/11/2016;

6.   Copy of Discovery Deposition Transcript for Co-Defendant, Jeffrey Jagielski, completed on 1/28/2016;

7.   Copy of U.S. Cohen, 2006 U.S. Dist. LEXIS 6581;

8.   Copy of DPD Incident Search Reports concerning Plaintiff's carjacking that previously occurred on 3/19/2002;

9.   Copy of Deposition Transcript of City of Southfield Retired Sgt Lawrence Porter, completed on 2/9/2016;

10.   Copy of Clinical Neuropsychological Examination Report of Plaintiff, Tony D. Beard, Jr., completed in Oct 2011;

11.   Copy of MRI Report for Plaintiff, Tony D. Beard, Jr., dated 10/28/2011;

12.   Copy of Tony D. Beard, Jr.'s 46th Judicial Distrcit Court's Preliminary Examination Transcript held on 9/13/2013, concerning testimony provided by City of Southfield Police, Sgt. Katie Schneider;

13.  Copy of Plaintiff's, Police Expert Witness, Benjamin Lee's Written Report, dated 5/5/2016, together with copy of Up-to-Date CV;

14.  Photographs of Plaintiff, Tony D. Beard, Jr., depicting injuries sustained to forehead, face, cheek, jaw, shoulder, chest and wrists;

15.  Photographs of Plaintiff, Tony D. Beard, Jr., taser scars on lower back;

16.  Taser Reports for Officer(s) K. Schneider and T. Gougeon;

17.  Photographs depicting the bloody grounds directly outside of Plaintiff, Tony Beard's 2009 Chevy Tahoe and Defendant Officer Eric Jachym's patrol car following the incident which occurred on 9/6/2011;

18.  Copy of Deposition Transcript of City of Southfield Police Officer-Matthew Taylor, completed on 2/5/2016;

19.  Copy of the City of Southfield Police Department, Case Report, CR No. 110040137, dated 9/6/2011;

20.  Copy of photographs taken by Southfield Police of Plaintiff, Tony Beard, Jr. on 9/6/2011, at the precinct immediately following his arrest;

21.  Copy of Plaintiff, Tony D. Beard, Jr.'s Medical Records from St. John Providence Hospital following his admission on 9/6/2011;

22.  Copy of Defendant's Supplemental Response to Plaintiff's Revised Combined Fourth Set of Interrogatories and Request for Production of Documents Directed to Defendant-City of Southfield, served on Plaintiff Counsel on 6/3/2016, following the Court Order on Motion to Compel, [Doc #124], issued on 5/27/2016.  See Supplemental Answers provided to Interrogatories 2 and 4;

23.  Copy of Defendant City of Southfield's Supplemental Response to Plaintiff's Fifth Request for Production of Documents Directed to

Defendant-City of Southfield, served on Plaintiff Counsel on 6/3/2016, following the Court Order on Motion to Compel, [Doc #124], issued on 5/27/2016. See Supplemental Answers provided to Request for Production of Documents No. 1;

24. Copy of Deposition Transcript of City of Southfield Police Officer-Ryan Losh, completed on 1/27/2016;

25. Copy of Deposition Transcript of City of Southfield Chief of Police-Eric Hawkins, completed on 3/17/2016;

26. Copy of Deposition Transcript of City of Southfield Police Officer-Kory Karpinski, completed on 2/2/2016;

27. Complete Copy of MCLS 762.3, regarding jurisdiction and venue of courts not local law enforcement;

28. Complete Copy of MCLS 762.4, regarding jurisdiction and venue of courts not local law enforcement;

29. Copy of Deposition Transcript of City of Southfield Police Officer Katie  Schneider, completed on 1/25/2016;

30. Copy of Deposition Transcript of City of Southfield Police Officer Timothy Gourgeon;

31. Copy of Taylor v City of Falmouth, 187 Fed. Appx. 596; 2006 U.S. App. LEXIS 17287; 2006 FED App. 0482N (6th Cir.)

## INTRODUCTION

On Jan. 1, 2015, this Honorable Court did grant Plaintiff leave to file the Plaintiff's First Amended Complaint.  **[ECF No.(s) 18 and 18-1].** Within said pleading, Mr. Beard brought three (3) counts, all as allowed, under 42 USC § 1983, against the City of Southfield and ten (10) of its Police Officers for an incident which occurred and involved Mr. Beard, a Legally Incapacitated Individual, and the ten named Southfield Police Officers. **[ECF No.18]** The incident in question occurred on September 6, 2011, for actions which all occurred in the City of Detroit, County of Wayne, State of Michigan   (See DPD Traffic Crash Report No., attached as **Plaintiff's Exhibit No. 1**; and footage from Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**, @ 00:51:16 – 00:51:43, **[ECF No. 118]**). Plaintiff has properly plead and alleged that these events only occurred as a direct result of the improper, yet customary, territorial poaching practices done by two of the named defendants (i.e. Southfield Police Officers: Jeffrey Jagileski and Jason Schneider of the City of Southfield Police Tactical Crimes Suppression Unit), all within the City of Detroit, a geographic area that was admittedly, totally outside of the officers' established and legal jurisdictional boundaries (i.e. the City of Southfield),

1

and thus, an area to which neither the City of Southfield nor its officers, had, while acting under color of law on 9/6/2011, either been formally requested or asked to assist, by other local and/or state level law enforcement agencies; nor independently, had any legal basis or authority, as a matter of law, to act under the particular set of circumstances which occurred on the morning in question involving Mr. Beard. [See **ECF No. 18**, Pg. ID 156 at ¶ 16; also see copy of MCL 764.2a, attached as **Plaintiff's Exhibit No. 2**; and footage from Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**, @ 00:51:16 – 00:51:43, **ECF No. 118**)

## COUNTER-STATEMENT OF FACTS

During the early morning hours of September 6, 2011, just before 1:00 am, Plaintiff, Tony D. Beard Jr, then a 28 year old Black male, was proceeding north on Greenfield Road, south of Eight Mile Rd, in the City of Detroit, County of Wayne, State of Michigan, in his legally owned, properly registered and insured 2009 Chevy Tahoe. (See copy of Mr. Beard's, State of Michigan Motor Vehicle Proof of Registration and Proof of Insurance, attached as **Plaintiff's Exhibit Group No. 3,** together with footage from Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**, @ 00:51:16- 00:51:43 **[ECF No. 118])** The Plaintiff, following a most

unfortunate encounter that involved certain City of Southfield Police personnel on the morning of 9/6/2011, believed that his civil rights had been seriously infringed upon, and as such, he, through his legal guardian and mother, Johnette Ford, brought a 42 USC §1983 based legal action against the City of Southfield and ten of its officers, wherein he pled therein, that his U.S. Constitutional, Fourth and Fourteenth Amendment Rights, including but not limited to his rights to be secure in his person, houses, papers, and effects, against unreasonable searches and seizure, by any government official, were violated. (**ECF Doc No. 18**, Pg. ID 162, at **¶ 34**)

On the morning of 9/6/2011, admittedly, the only thing that was on the Plaintiff's mind was a woman. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, p. 64) Plaintiff had already spent most of the day with one woman. And at the time this incident occurred, which was just before 1:00 a.m. on September 6, 2011, the Plaintiff was merely trying to meet with another young lady named Tina. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 64, 84) Unfortunately, that never happened.  Instead Mr. Beard encountered Defendant Southfield Police Officer(s) Jeffrey Jagielski and Jason Schneider, members of the City of Southfield's Tactical Crimes

3

Suppression Unit, an openly proud and brazen Special Unit within the City of Southfield's Police Department, that describes themselves as "PROACTIVE". (Footage from Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**, @ 00:51:54 in **ECF No. 118;** and Transcript of Officer J. Schneider Deposition, attached as **Plaintiff's Exhibit No. 5**, pp. 56, 57) During discovery in this case, Officer Jason Schneider did admit on the record, that upon initially seeing the Plaintiff, he and his partner Sgt Jagielski, decided to leave their own jurisdiction (i.e. the City of Southfield) to pursue Mr. Beard. (Transcript of Officer J. Schneider's Deposition, attached as **Plaintiff's Exhibit No. 5,** p. 24) Upon careful review of certain secured dash cam video footage, one is able to clearly observe that the officers began openly stalking Mr. Beard, who was in the City of Detroit, for a period of approximately 34 seconds, without having actually witnessed him commit any crime to the level that legally afforded them an opportunity to act under color of law. (Footage from Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**, @ 00:51:16 – 00:51:50, in **ECF No. 118**)  Officer Jagielski, as the driver, admitted to that very fact;

Officer Jason Schneider also admitted on the record that he was merely acting on no more than "a hunch" versus the requisite "reasonable suspicion" when he first observed Mr. Beard on the morning of 9/6/2011 (Transcript of Officer J. Schneider's Deposition, attached as **Plaintiff's Exhibit No. 5,** pp. 57, 58) That being the case, neither officer had an established, genuine legal basis or the required probable cause necessary to approach and/or eventually engage with Mr. Beard on 9/6/2011. (See copy of U.S. Cohen, 2006 U.S. Dist. LEXIS 6581, attached as **Plaintiff's Exhibit No. 7**) These same two Police Officers would later state that based on what Mr. Beard decided to do in their presence, but admittedly not within their jurisdiction (i.e. allegedly made an improper u-turn), his actions appeared to them to warrant a finding, that his car had been stolen. (Transcript of Officer J. Schneider's Deposition, attached as **Plaintiff's Exhibit No. 5,** pp. 54, 55, 58**)** The officer(s) went on to state on the record that they had assumed that he had acted in the manner that he did (i.e. made a u-turn) solely because he had allegedly saw them as he was approaching a traffic control device that was non-operational, and thus being treated as a four-way stop, and so, in their minds, he clearly was trying to evade and/or wanted to avoid them because he was possibly in a stolen vehicle. (Transcript of Officer J. Schneider's Deposition, attached as

**Plaintiff's Exhibit No. 5,** p. 55) Mr. Beard denies that his turn, which he classified as a wide right turn, was even an actual u-turn. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, p. 86) According to Mr. Beard, all that had occurred just seconds before he reached 8 Mile Road, was that he had decided to call a young lady named Tina, to see if she was off work, and while trying to do so, his cell phone dropped. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, p. 64) Tina purportedly lived on Biltmore Street, south of Eight Mile Rd in the City of Detroit. So Mr. Beard then reached for his cell phone, and it fell on the front passenger side floor. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 64, 83) Mr. Beard then made a wide right turn into the driveway of the nearby car wash, which was located off of Greenfield, on the southeast corner of Greenfield and Eight Mile Road, in the City of Detroit, County of Wayne. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 64, 65; and that dash cam video footage secured from Sergeant Jagielski's Dashboard Camera, filed as **Defendant's Exhibit 5**, @ 00:51:16 – 00:51:31, in **ECF No. 118**) Once in the car wash's lot, Mr. Beard then took off his seatbelt and reached over to the front passenger-side floor to retrieve his cell phone, which had previously fallen. (Transcript of Tony

Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 64, 65, 85)

He then proceeded by making a quick left turn into that alley between the

car wash and the adjoining gas station, located to the immediately south.

Mr. Beard then proceeded to travel eastward down the adjoining alley,

between Greenfield Road and Prest, and it was then, that he observed a

suspicious looking black vehicle that appeared to clearly be following him,

mind you, all while in a back alley, that was pitch-black seeing that the

nights in the area were temporarily out. (See video footage from Sergeant

Jagielski's Dashboard Camera, filed as **Defenants' Exhibit 5**, @ 00:51:31

– 00:51:43, in **ECF No. 118**) As any reasonable person would do in this

instance, Mr. Beard then sped up hoping to get out of the alley and away

from this black vehicle that appeared to be tailing him. (See video footage

from Sergeant Jagielski's Dashboard Camera, filed as **Defenants'**

**Exhibit 5**, @ 00:51:31 – 00:51:43, in **ECF No. 118**) But then, that black

vehicle that was immediately behind him also appeared be speeding up.

(See video footage from Sergeant Jagielski's Dashboard Camera, filed as

**Defenants' Exhibit 5**, @ 00:51:35, in **ECF No. 118**) At this point, Mr.

Beard, as a former native of Detroit, was then in fear for his overall safety

and life, and so instinctually, his intentions were to loose and/or outrun

whomever was behind him that appeared to be trying to follow him in a

7

mysterious black motor vehicle. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 84, 87) For in Mr. Beard's mind, he honestly felt in that very moment that whoever was following him was now a potential threat, out to rob, hurt or even kill him. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 65, 84) This made total sense to Mr. Beard, seeing that back in March of 2002, he had been a victim of a similar carjacking in the City of Detroit, that was done by two males riding in a Black Crown Victoria. This very fact was reported to the DPD by Mr. Beard and also disclosed to Defense Counsel during discovery. (Copy of DPD 2002 Carjacking Report filed on behalf of Mr. Beard, attached as **Plaintiff's Exhibit No. 8**) In short, Mr. Beard was afraid of this very same thing happening to him again, and at least initially, he had no idea that the persons tailing him might actually be Police Officers, driving in an unmarked car. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4,** pp. 84, 87; and that video footage from Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**, @ 00:51:16 – 00:51:54, in **ECF No. 118)** Mr. Beard's interpretation could certainly be viewed by most as reasonable, seeing that the vehicle tailing him through the alley and now beyond, had no activated overhead lights or sirens on, nor any other distinctive police car makings or

anything that could visibly be seen, which would help a person or ordinary intelligence, properly indentify that they were actually law enforcement. (Footage from Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**, @ 00:51:16 – 00:51:54, in **ECF No. 118**)

Again, at least in Mr. Beard's mind, he knew that he hadn't violated any traffic laws, or any other laws for that matter, so he seriously doubted that it was law enforcement that was now tailing and stalking him. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 65, 89; and the Transcript of Officer J. Jagielski's Deposition, attached as **Plaintiff's Exhibit No. 6**, pp. 41, line 5 – pp. 44, line 16; and that video footage from Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**, @ 00:51:16 – 00:51:53, in **ECF No. 118**).

So Mr. Beard continued on with his reasonable pursuit to escape and get out of the alley as fast as he could, and then continued, by heading eastbound on Eight Mile Round, at all times, still in the City of Detroit, County of Wayne, merely trying to get away from whomever appeared to be tailing him. (See video footage from Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**, @ 00:51:31 – 00:51:53, in **ECF No. 118**) Then, with a least 38+ seconds having lapsed since this escapade had ensued, as Mr. Beard was approaching Hubbell Street, still

in Detroit, only then did he hear sirens and/or see overhead lights being activated. (See video footage from Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**, @ 00:51:54, in **ECF No. 118**) But even still, Mr. Beard did not think that the police could be pursuing him, since again, he knew, at least in his own mind, that he hadn't done anything wrong to warrant the police pursing him, so thinking that, he kept going (See video footage from Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**, @ 00:51:54, in **ECF No. 118**)

Mr. Beard did come to eventually realize that it was the police that were actually behind him but he still wasn't sure that they wanted to pull him over versus someone else. (See video footage from Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**, @ 00:52:00, in **ECF No. 118**)

As a whole, the entire police chase lasted approximately 14 minutes and 25 seconds.(See video footage from Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**, in **ECF No. 118**). And during the 14:30 minute chase, Mr. Beard's car was actually struck multiple times, and at least once, by Retired Southfield Police Sgt Lawrence Porter; a couple times by Sgt Jagielski's patrol car; and once by Sgt Katie Schneider's patrol car (See video footage from Sergeant Jagielski's Dashboard Camera, filed

as **Defendants' Exhibit 5**, @ 00:51:16 – 00:51:43, and 00:54:41, 00:59:22, 1:01:39 in **ECF No. 118;** and that video footage secured from Retired Sergeant Lawrence Porter's Dashboard Camera, filed as **Defendants' Exhibit 10**, @ 00:58:05 – 00:58:08, in **ECF No. 118;** and Officer Eric Jachym's Dashboard Camera, filed as **Defendants' Exhibit 8**, @ 00:57:48) And according to Mr. Beard, in an attempt to personally avoid him making direct, head-to-head contact with Sergeant Porter's patrol vehicle during the chase, he intentionally swerved his own motor vehicle, and went unto the grass area. (Footage from Retired Sergeant Lawrence Porter's Dashboard Camera, filed as **Defendants' Exhibit 10**, @ 00:58:05 – 00:58:08, in **ECF No. 118**) Unfortunately, he was not successful. Mr. Beard contends that it was Sergeant Porter who intentionally caused his patrol vehicle to run into his Chevy Tahoe. (Footage from Retired Sergeant Lawrence Porter's Dashboard Camera, filed as **Defendants' Exhibit 10**, @ 00:58:05 – 00:58:08, in **ECF No. 118**)

In the end, when Mr. Beard was asked why he was running, he simply stated that he was scared. (Transcript of Retired Sergeant Lawrence Porter Deposition, attached as **Plaintiff's Exhibit 9**, p. 53, lines 17-21) In truth, Mr. Beard's overall reaction and/or overreaction to the events that occurred on the night in question, were more likely than not, due in large

part to his well-documented, pre-existing mental disabilities and fully diagnosed cognitive deficits. (See copy of Tony Beard's Clinical Neuropsychological Examination completed in Oct. 2011, page 22, under ¶ 3, entitled "<u>Specific Behaviors and Limitations</u>", attached as **Plaintiff's Exhibit No. 10;** and a copy of that MRI Brain Study completed on 10/28/2011, attached as **Plaintiff's Exhibit No. 11.**

At the end of the chase, Defendant Office Eric Jachym did allege that Mr. Beard then attempted to accelerate and get away, thus resulting in Mr. Beard's motor vehicle ending up on the hood of his. (See video footage from Officer Eric Jachym's Dashboard Camera, filed as **Defendants' Exhibit 8**, @ 00:57:53, in **ECF No. 118)** Mr. Beard vehemently denies this factual assertion. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 98, 99) However, the video footage captured by Officer Jachym's dash cam clearly shows that that was not at all what occurred, and that Mr. Beard's vehicle barely moved after Sgt Katie Schneider's successfully executed her PIT maneuver, and as such, this creates a question of fact as to who's version of the story at that point should be believed. (Footage from Officer Eric Jachym's Dashboard Camera, filed as **Defendants' Exhibit 8**, @ 00:57:53, in **ECF No. 118)**

Following the stop and end of the chase, Defendant-Katie Schneider was the first Officer to Plaintiff's driver's side door after Mr. Beard's vehicle was pitted**.** (Transcript of Sergeant Katie Schneider, at Tony Beard's Criminal Preliminary Exam, held at 46th Judicial District Court on 9/13/2013, attached as **Plaintiff's Exhibit 12**, p. 22, lines 1-11) Sgt Katie Schneider, said that when she approached Plaintiff's vehicle, allegedly Mr. Beard appeared to be doing and/or going after something in the center console area of his car and so she ordered him to show his hands and he did so, instantaneous. (Transcript of Sergeant Katie Schneider, at Tony Beard's Criminal Preliminary Exam, held at 46th Judicial District Court on 9/13/2013, attached as **Plaintiff's Exhibit 12**, p. 23, lines 7-9) Mr. Beard has consistency stated on the record, in both his prior state criminal case and this federal civil case, that when City of Southfield Police, Sergeant Katie Schneider initially approached him as he was seated in the driver's seat of his Chevy Tahoe, following the chase, she initially had her department issued service revolver out and pointed directly at him and then said: "If you fucking move, I'll kill you!" (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 70, 98, 100) Mr. Beard also said that he put his hands up right away and then Officer K. Schneider, via her own testimony, confirmed that she transitioned from her revolver/pistol to her

taser. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 102, 103; and Transcript of Sergeant Katie Schneider, at Tony Beard's Criminal Preliminary Exam, held at 46th Judicial District Court on 9/13/2013, attached as **Plaintiff's Exhibit 12**, pp. 12, 13) Mr. Beard stated that after Officer Katie Schneider got to his driver's side door, within a matter of seconds, many other Southfield Police Officers then rushed up to the driver's side door of his vehicle, all yelling simultaneously, all kinds of different commands, including the commands: "get out" and "get on the ground" (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 70, 71; Transcript of Sergeant Katie Schneider, at Tony Beard's Criminal Preliminary Exam, held at 46th Judicial District Court on 9/13/2013, attached as **Plaintiff's Exhibit 12**, pp. 13, lines 9-13); and Footage from Officer Eric Jachym's Dashboard Camera, filed as **Defendants' Exhibit 8**, @ 00:57:53 – 00:58:25, in **ECF No. 118**) Mr. Beard has contended all along that he tried his absolute best to comply with every command issued by all of the officers. (See transcript of Tony Beard's Deposition, attached as **Plantiff's Exhibit No. 4**, pp. 71, and that video footage from Officer Eric Jachym's Dashboard Camera, filed as **Defendants' Exhibit 8**, @ 00:57:53 – 01:00:37, in **ECF No. 118**) Mr. Beard has also testified to the fact that as he tried to open the driver's side door of

his Tahoe, in order to follow the one command of Officer Katie Schneider, to "get out", but at around 5 inches into the maneuver of him trying to open his driver's side door, another white male Police Officer, then violently slammed the door back shut, finished punching out the window, punched him directly in the face and then began grabbing at him, in an effort to physically pull him out of the driver's side window by way of his neck. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 72 and that video footage from Officer Eric Jachym's Dashboard Camera, filed as **Defendants' Exhibit 8**, @ 00:58:03 – 00:58:25, in **ECF No. 118**) By the time this ordeal was over, Mr. Beard had not once been allowed a reasonable opportunity to comply with the multiple commands that were being made to him by multiple officers, which called for him, and at all the same time, to either "don't fucking move" and/or "get out" but instead, he was physically and violently pulled out of the broken driver's side door window of his motor vehicle by his neck as well as by other part's of his body, by multiple white male Police Officers that worked for the City of Southfield. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 70-74; copy of Plaintiff's Police Misconduct Expert-Benjamin Lee's Written Report and CV, attached as **Plaintiff's Exhibit No. 13;** and footage from Officer Eric Jachym's Dashboard

Camera, filed as **Defendants' Exhibit 8**, @ 00:58:03 -01:00:37 in **ECF No. 118)** Mr. Beard admits that as this group of white male Police Officers were doing all of this to him, he was reasonably, unable to identify them individually, given how fast things appeared to be going as well as given has physical disposition at the time. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 106, 107; and Footage from Officer Eric Jachym's Dashboard Camera, filed as **Defendants' Exhibit 8**, @ 00:58:03 – 01:00:37, in **ECF No. 118)** Mr. Beard was then pulled out of his vehicle by being violently grabbed about the neck and upper body parts, while at the same time being tasered multiple times and then, eventually violently thrown and slammed face and head-first to the ground, with great force and might, only to again continue being tasered on multiple occasions in his upper and lower back area, by Officer Katie Schneider and others. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 71-74; Footage from Officer Eric Jachym's Dashboard Camera, filed as **Defendants' Exhibit 8**, @ 00:58:03 – 01:00:37, in **ECF No. 118;** and those group photographs depicting both the abrasions, concrete burn marks and contusions that appeared about Mr. Beard's forehead, left cheek, left shoulder, chest and wrist areas; and the multiple taser marks on Mr. Beard's body immediately after the episode ended, as seen in

**Plaintiff's attached Exhibit No(s). 14 and 15**) Mr. Beard also recalls that while he was on the ground, and face-down, other Southfield Police Officers began beating, tasing, punching and kicking him, both before and after he had been handcuffed. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 71-74 and Footage from Officer Eric Jachym's Dashboard Camera, filed as **Defendants' Exhibit 8**, @ 00:58:25 – 01:00:38, in **ECF No. 118**) And although the Defendants have only provided evidence to show that Mr. Beard was tased by Sgt Katie Schneider and Evidence Tech Timothy Gougeon, Mr. Beard did also testify during his discovery deposition that Officer Matthew Taylor, also tased and cursed at him, and that this all occurred after he was in handcuffs. (See attached copies of City of Southfield Police Taser Reported, attached as **Plaintiff's Exhibit No. 15;** and Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 112, 113, 200) Mr. Beard has also testified that following being handcuffed, he was beaten, pulled and dragged from one area to another, all while on the ground and in handcuffs, as well as being cursed out and called racial slurs, including the "N Word" by several white male Police Officers from the City of Southfield, that were then physically handling him, but to whom he could not identify in the moment, given all that was going on. (Transcript of Tony Beard's

Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 106,111,112; video footage from Officer Eric Jachym's Dashboard Camera, filed as **Defendants' Exhibit 8**, @ 00:58:25 – 01:00:38, in **ECF No. 118** and the photographs taken of the ground and pavement area directly outside of both the driver's side door of Mr. Beard's Chevy Tahoe and in front of Officer Eric Jachym's parked patrol car, as attached in **Plaintiff's Exhibit Group No. 15)** During the deposition of Officer Matthew Taylor, he testified to the fact that there were between 5 to 10 officers on the scene and in the same area that he was, at the end of the chase. (Transcript of Officer Matthew Taylor, attached as **Plaintiff's Exhibit 18**, pp. 27 and 28)

In short, Mr. Beard, personally knows what he experienced physically and heard audibly on 9/6/2011, all at the hands of the named Defendant-Officer(s), for he has now properly established proof of the same, by way of the evidence he has gathered and attached herein. Nevertheless, given how the assault and battery went down, combined with his physical limitations and disposition while being both seriously beaten and tasered at the time, on the night in question, he was unfortunately not able to personally see, identify and/or determine exactly, who the specific individuals were that had physically beaten, dragged, and called him the "N Word" from that group of white male Police Officers that made up a part of

that City of Southfield's Police Force that had arrived on the scene immediately after the chase ended. As such, unfortunately, Mr. Beard understands that he's left to rely mostly upon the secured dam cam video tape footage, which now makes up a part of the evidence being presented with the Defendant's Summary Judgment Motion, as well as the individual testimony obtained from each officer during the taking of their respective deposition during discovery, in relation to their admitted personal involvement with him on the night in question. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 106, 118, 119, 120; and both footage from Officer Eric Jachym's Dashboard Camera, filed as **Defendants' Exhibit 8**, @ 00:57:52 – 01:00:38 and video footage from Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**, @ 01:05:45 – 01:06:00, in **[ECF No. 118]**

Following the main beating, Mr. Beard was then improperly handled physically by Defendant Officer(s) Jason Schneider, Ryan Losh and/or Matthew Taylor after being lifted up from the ground in handcuffs and them violently slammed face down on the hood of Defendant Officer Eric Jachym's assigned patrol vehicle. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, p. 200; video footage secured from

Officer Eric Jachym's Dashboard Camera, filed as **Defendants' Exhibit 8**, @ 01:00:38 -01:00:45, in **ECF No. 118;**

Thereafter, Mr. Beard was then placed in the physical custody of Defendant Officer Matthew Taylor by Officer Jason Schneider (Transcript of Officer Matthew Taylor's Deposition, attached as **Plaintiff's Exhibit 18**, p.40, lines 23-25) Mr. Beard was then transported to the Southfield jail by Officer Matthew Taylor only. (Transcript of Officer Matthew Taylor's Deposition, attached as **Plaintiff's Exhibit 18**, p.41, lines 2-8)

Officer Matthew Taylor is believed to have been operating Southfield Police Unit 65 on the night in question, this motor vehicle being a Black Charger. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 75)  Mysteriously, this vehicle's dash cam video footage, although initially reported and recorded as having been turned into evidence, was later reported as being "defective" subsequent to Mr. Beard's arrest, and prior to Plaintiff Counsel's discovery request. (Copy of Southfield PD, Case Report, CR No. 110040137, dated 9/6/2011, attached as **Plaintiff's Exhibit No. 19)**

Upon Mr. Beard's ultimate arrival to the Southfield Police Station, he was obviously seriously injured and in need of immediate medical attention.

(Copies of group photos taken of Tony Beard upon arrival to Southfield Police Station, attached as **Plaintiff's Exhibit Group No. 20)**  A security guard on duty then started immediately taking pictures of him, and while doing so, the Plaintiff asked the guard why he was taking photographs of him, to which the guard replied: "We can't be responsible for your injuries." (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, p. 75)  The security guard then instructed Mr. Beard to get into the cell, at which time Mr. Beard insisted that he couldn't just go into a jail cell in his physical condition, but instead, that he needed to go to the hospital. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, p. 76) According to Mr. Beard, the security guard then responded by advising him that he would have to ask or inquire of his immediate supervisor, who the Plaintiff believed was City of Southfield Police Lieutenant Leon. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 76) Mr. Beard testified that the guard was then gone for a few minutes, and upon returning, advised him that he had been cleared to go to the hospital. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, p. 76)

Southfield Police Officers Matt Taylor and Eric Jachym then took Mr. Beard to Providence Hospital, located on West 9 Mile Road, in the City of

Southfield. (Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, p. 77, and Transcript of Officer Matthew Taylor's Deposition, attached as **Plaintiff's Exhibit 18**, pp. 54, 55). During his ER admission at Providence Hospital, Mr. Beard was medically diagnosed as having sustained the following bodily injuries: maxillary and frontal sinus facial fractures; contusion, left shoulder, right shoulder; abrasion chest wall; rib contusion left; laceration minor right lateral tongue border; contusion forehead; and closed head injury. (Copies of Tony Beard's Medical Records from Providence Hospital, attached as **Plaintiff's Exhibit Group No. 21** )

Following Mr. Beard's release and upon being properly bonded out from the events which occurred on the morning of 9/6/2011, as a direct result of the recorded Police Reports that contained false information with regard to both jurisdiction and where the alleged events of 9/6/2011 were said to have occurred, all as prepared by Defendant Officer-Jason Schneider (Copy of Southfield PD Case Report, CR 110040137, Pages 5 and 6, attached as **Plaintiff's Exhibit No. 19,** beginning at the bottom of page Pages 5 and tope of 6), Mr. Beard was then ultimately charged in Oakland County Michigan, with the following four criminal counts:  Count I: Fleeing and Eluding the Police-3rd Degree; Count II: Malicious Destruction

of Police/Fire Property; Count III: Resisting and/or Obstructing the Police; and Count 4:  Possession of Marijuana. (Copy of Transcript concerning Tony Beard's Criminal Preliminary Exam, held at 46th Judicial District Court on 9/13/2013, attached as **Plaintiff's Exhibit 12**, pp. 3,4)

Thereafter, on 4/29/2014, Mr. Beard was eventually found by a Oakland County Jury: not guilty of Count II; and guilty of the remaining three counts. (**ECF No. 67-2**, Pg. ID 925)  Then on 6/5/2014, Mr. Beard was subsequently acquitted as to Count III: "Resisting and/or Obstructing the Police, by the presiding judge, Retired-Honorable Rudy J. Nichols. In a formal written Opinion and Order entered by His Honor on June 5, 2014, Judge Nichols ruled in part:  "Based on the testimony elicited during trial, the Court finds that the verdict of guilty on Count III as to Defendant resisting and obstructing the police was a miscarriage of justice.  Therefore, Defendant's motion for new trial and/or acquittal is granted in part." (**ECF No. 67-2**, Pg. ID 924; **ECF No. 67-3**, Pg. ID 933-934.)

## **STANDARD OF REVIEW**

Plaintiff for the most part agrees with the Defendants recitation of the standard of review. However, the Plaintiff would like to merely add herein, parts of that court ruling set forth in ***Ridgeway v Union County Comm'rs, 775 F. Supp 1105 (1991),*** wherein the court held: "A judge considering a motion for summary judgment must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." The court went on to state:

> "Fed. R. Civ. P. 56(c) provides in part that a judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

## <u>LAW AND ANALYSIS  ON PRESENTED ISSUES</u>

I.   **INDIVIDUAL DEFENDANTS, ACTING UNDER COLOR OF LAW, ARE NOT ENTITLED TO QUALIFIED IMMUNITY OR ANY OTHER IMMUNITIES WHEN THEIR ACTIONS RESULT IN AN UNLAWFUL SEIZURE OF A U.S. CITIZEN THAT IS IN DIRECT VIOLATION OF SAID U.S. CITIZEN'S FOURTH AMENDMENT RIGHT, AS ESTABLISHED UNDER THE U.S. CONSTITUTION DUE TO SAID DEFENDANTS WRONGFULLY ENGAGING WITH SAID CITIZEN WITHOUT THERE FIRST BEING ESTABLISHED, EITHER A REASONABLE SUSPENSION THAT CRIME WAS AFOOT AND/OR PROBABLE CAUSE, AS RECOGNIZED BY LAW, AT EITHER THE STATE OR FEDERAL LEVEL**

Given the Defendant's position, the Plaintiff feels it appropriate to start by addressing the issue of the proper application of **Heck v Humphrey,** **512 U.S. 477 (1994)**, also referred to as the "Heck Doctrine" by Defense Counsel. The Plaintiff contends that his claim for unlawful seizure should not be dismissed by this court in light of the scope of facts at hand, and given the final ruing set forth in Heck.

The **issue** in Heck was*: "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C.  § 1983."*  The court ruled in part:

"If regardless of the relief sought, the plaintiff [in a federal civil rights action] is challenging the legality of his conviction, so that if he won

25

his case the state would be obliged to release him even if he hadn't sought that relief, the suit is classified as an application for habeas corpus and the plaintiff must exhaust his state remedies, on pain of dismissal if he fails to do so." 997 F.2d, 355, 357 (1997); and furthermore:

"….when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence had already been invalidated. ***But*** if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, then action should be allowed to proceed, in absence to some other bar to the suit."

Given the plain language set forth in Heck, as cited above, the Plaintiff, Mr. Beard does contend that this court, in looking at the pleading, alleged facts and gathered evidence, which is now all being presented by and between the movant and non-movant in the body of their respective motions, can clearly and easily determine that Mr. Beard's present 42 USC § 1983 action, even if successful, **would not** act to demonstrate the invalidity of

26

any outstanding criminal judgment previously obtained against him, and as

such, his "Unlawful Seizure" claim  should be allowed to proceed,

especially in light of the fact that there is no other bar to this portion of his

suit which is grounded in his alleged constitutional claim, that on Sept. 6,

2011, certain Police Officers *had no probable cause* to stop him, and as

such, he should have been afforded his legal right to have been free of any

unreasonable seizure, while conducting himself as a law abiding citizen, in

an area and/or territory that was not even under the legal authority or

jurisdiction of the Defendant Officers to start with (i.e. City of Detroit,

County of Wayne); especially given that the only reasonable suspicion that

the main wrongdoer, Officer Jason Schneider, was able to finally articulate

under oath, was that of having had nothing more than *a mere "hunch"* that

illegal activity was afoot, which is, in and of itself, been determined by the

US Courts to be insufficient. ***See copy of U.S. v Cohen, 2006 U.S. Dist.***

***LEXIS 6581; 2006 WL 435497***, attached as Plaintiff's Exhibit No. 7; and

copy of the transcript of Officer J. Schneider's Deposition, attached as

**Plaintiff's Exhibit No. 5,** pp. 57, 58)

The Plaintiff would further argue that the above explanation or basis

provided by Officer Jason Schneider (Transcript of Officer J. Schneider's

Deposition, attached as **Plaintiff's Exhibit No. 5,** pp. 57, 58) was in and of

itself, clearly a fallback, only brought forth, after it was made crystal clear,

via the viewing of certain videotaped patrol car dash cam evidence (i.e. see

video footage from Sergeant Jagielski's Dashboard Camera, filed as

**Defendants' Exhibit 5**, @ 00:51:16 – 00:51:43, **[ECF No. 118]**), that

Officer Jason Schneider had fabricated certain critical facts (i.e. lied about

where the original events had occurred (i.e. within the City of Southfield,

County of Oakland) in the Southfield PD Report on 9/6/2011, solely to help

establish both probable cause and their jurisdictional authority, given that

Mr. Beard was said to have initially left the City of Detroit, County of

Wayne, and entered the City of Southfield, County of Oakland. (Please also

see attached, **Plaintiff's Exhibit No. 19** @ the bottom of page 5 and top of

page 6 of the complete 11- Page Southfield PD Case Report, CR No.

110040137) For once again, the Plaintiff would like to remind and/or point

out that this fabricated story, as created by Officer Jason Schneider on

9/6/2011 (i.e. the date of loss), was the only way that legally, the City of

Southfield and/or its officers, acting under color of law, under the

circumstances alleged to have occurred (i.e. that Mr. Beard made a

questionable illegal u-turn in their presence but not in their actual

jurisdiction), would have ever had, to help support that the City of

Southfield, did in fact, have a legal basis to even engage with Mr. Beard in

the first place. See copy of the applicable law in the State of Michigan (i.e. MCLS 764.2a), attached as **Plaintiff's Exhibit No. 2**; and copies of the Defendants' Supplemental Response(s) to Plaintiff's Revised Combined 4th and 5th Set(s) of Interrogatories, served on Plaintiff's Counsel on June 3, 2016, per the court's Order on Motion to Compel entered on May 27, 2016 [See Docket #124], attached as **Plaintiff's Exhibit No.(s) 22 and 23.**

Furthermore, on the issue/question of "illegal seizure", the Plaintiff would also like to direct the court's attention to the following testimony:

1. Defendant, Southfield Police Officer Ryan Losh plainly states that as far as he's aware, based on all prior training received, the one-mile rule only applies to felony level offenses that an officer may have personally observed which would then give his/her the legal right to pursue the wrongdoer. Please see attached, **Plaintiff Exhibit No. 24** (Deposition Transcript of Officer Ryan Losh, pp.83, 84, lines 1-4)

2. Retired City of Southfield, Tactical Crimes Suppression Unit, Supervising Officer, Sergeant Lawrence Porter, then reiterates the position taken above by his former subordinate, Defendant Officer Ryan Losh.

Please see attached, **Plaintiff Exhibit No. 9** (Deposition Transcript of City of Southfield, Retired Sgt Lawrence Porter, p. 38, lines 19-25; and p. 39, lines 1-14)

3.    And finally, acting City of Southfield, Chief of Police Eric Hawkins, then also stands behind the same position taken by his subordinate, Defendant Officer Ryan Losh:

Please see attached, **Plaintiff Exhibit No. 25** (Deposition Transcript Testimony of City of Southfield, Chief of Police, Eric Hawkins: p. 8, lines 17-24; p.10, lines 10-17; p. 19, lines 23-25; and P. 20, lines 1-7)

Finally, Mr. Beard, contends that he should not now be prevented from challenging the issue of whether the particular Defendants (i.e. Officer(s) Jeffrey Jagielski and Jason Schneider) had the requisite probable cause and thus, not be allowed to maintain his constitutional claim of "Illegal Seizure", in light of the fact that the issue of probable cause in this instance, even if previously addressed and litigated at his prior criminal state proceedings, was clearly based solely upon Officer Jason Schneider's supplying of false information to help establish the required probable cause.  Therefore, Mr. Beard, in taking this position does also rely upon the court's ruling found in **Hardesty v City of Ecorse, 623 F. Supp. 2d 855**

30

**(6th Cir. 2009)** In Hardesty, the court held: "A finding of probable cause at a prior criminal proceedings **does not** bar a plaintiff in a subsequent civil action from maintaining an action for malicious prosecution where the plaintiff bases his claim on the police officer's supplying false information to establish probable cause."

And finally, if allowed to maintain this portion of his 42 USC § 1983 constitutional claim, Mr. Beard also argues that by doing the same, this **would not** permit nor provide him with any opportunity for collateral attack as to his previous "fleeing and eluding" conviction through this civil suit vehicle. For that certainly is not his intention in seeking the relief sought.

II.   **INDIVIDUAL DEFENDANTS, ACTING UNDER COLOR OF LAW, ARE NOT ENTITLED TO QUALIFIED IMMUNITY OR ANY OTHER IMMUNITIES WHEN THEIR ACTIONS RESULT IN THE "USE OF EXCESSIVE FORCE" AGAINST A U.S. CITIZEN THAT IS IN DIRECT VIOLATION OF SAID U.S. CITIZEN'S FOURTH AMENDMENT RIGHT TO BE FREE FROM THE THREAT OF SAME**

To begin, and simply to ensure that the record is clear, it is the Plaintiff's understanding in having thoroughly read and reviewed this pending dispositive motion, that it does appear that the Defendants' have now conceded, that as to this particular question/issue only, the following four (4) named Defendant Officers **are not** now seeking qualified immunity or summary judgment:  1.) *Sergeant Katie Schneider;  2.) Officer*

31

*Matthew Taylor; 3.) Officer Eric Jachym; and 4.) Specialist Timothy*
*Gougeon.*

Therefore, the remaining six (6) named Defendant Officer(s) are the
only individuals to which the Plaintiff's response on this particular
question/issue is required to address:  1. **Officer Jeffrey Jagielski; 2.)**
**Officer Jason Schneider; 3.) Officer Ryan Losh; 4.) Officer Blake**
**Matatall; 5.) Officer Nicholas Smiscik;** and **6.) Officer Kory Karpinsky.**

Having said that, the Plaintiff, in order to meet his particular burden at
this juncture, does fully understand that he must properly assist this court,
in the form of  pleadings, properly discovered evidence, affidavits, etc., in
determining, whether based on the evidence, any of the remaining six (6)
officers, based on their own individual actions and/or personal involvement
with respect to Mr. Beard, did so, in such a way, as to create a genuine
issue of material fact as to whether their respective actions could be
reasonably construed as amounting to the "use of excessive force" against
him on September 6, 2011. And if so, then at this juncture, they should be
"**DENIED**" qualified immunity and any legal entitlement of a summary
judgment.

    1.    **<u>As to Officer Jeffrey Jagielski:</u>**

The Plaintiff does now concede, that with respect to this named defendant only, in having now thoroughly reviewed and considered all of the evidence secured to date, including the testimonial evidence of this witness as well as the other nine named Defendant Officers, as to his 42 USC § 1983, Fourth Amendment U.S. Constitutional claim for "Excessive Force", it **does not appear** that this Officer had any personal involvement on the night in question that would not warrant this court finding that he has qualified immunity and is thus entitled to a summary judgment on this particular claim only.

However, with respect to Plaintiff's claim of ***"failure to intervene",*** he contends that the evidence does warrant, that the court hold that there does exist a genuine issue of material fact to prevent this Defendant from being granted qualified immunity and summary judgment. In support of his position, the Plaintiff does direct the court's attention to Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**, @ 01:05:45 – 01:06:00 **ECF No. 118**, which clearly shows that there were multiple City of Southfield Police Officers on the scene, including Officer Jeffrey Jagielski's partner, Officer Jason Schneider. Officer Jason Schneider admitted that he arrived to the scene of the chase and then had personal involvement with Mr. Beard. Mr. Beard also confirmed this very fact. (See Transcript of Tony

Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 109, 110);

Please also see the Transcript of Officer Jason Schneider, attached as

**Plaintiff's Exhibit No. 5**, pp. 66,68, 69 which confirms Officer Jason

Schneider's presence and personal involvement.  Please also see the

Transcript of Officer Jeffrey Jagielski, attached as **Plaintiff's Exhibit No. 6**,

pp. 62, 63, 64 where he states that he ran up towards the vehicle, towards

Mr. Beard's vehicle, at the same time that his partner, Officer Jason

Schneider actually got out, and that he also observed Mr. Beard in

handcuffs and still on the ground.

The facts and evidence show that Mr. Beard has both pled and

provided testimony that he was being beaten and tased, while he was still

seated in his vehicle; as he was being pulled out of his vehicle; and also

after he was on the ground and handcuffed.  Mr. Beard further testified that

he was being beaten by multiple officers, whose specific identifies he could

not provide given what was occurring. See transcript of Tony Beard's

Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 106, 107).

Therefore, as to this particular Defendant Officer, Mr. Beard alleges,

given the facts, Officer Jagielski was in a position to have intervened and

also had the reasonable means and opportunity to do so. Plaintiff relies on

**Burgess v. Fischer, 735 F.3d 462, 475-76 (6th Cir. 2013)** and **Ontha v**

**Rutherford Cnty., 222 Fed. Apps. 498 (6th Cir. 2007)**

    2.    **As to Officer Jason Schneider:**

The Plaintiff, with respect to this named defendant only, in having

now thoroughly reviewed and considered all of the evidence secured to

date, including the testimonial evidence of this witness as well as the other

nine named Defendant Officers, as to the Plaintiff's 42 USC § 1983, Fourth

Amendment U.S. Constitutional claim for "Excessive Force" states that **it**

**does appear** that this particular officer did have sufficient personal

involvement with Mr. Beard on the night in question that would warrant this

court finding, that Officer Jason Schneider, based on his own actions,

should not now be allowed to escape being determined by the trier of act,

personally liable, by simply asserting qualified immunity which would allow

him to be dismissed out as a party defendant.

In support of his position, the Plaintiff directs the court's attention to

Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**,

@ 01:05:55–01:06:00 **ECF No. 118**, which clearly shows Officer Schneider

running from his patrol car towards Mr. Beard and the other officers. The

Plaintiff also directs the court's attention to his (i.e. Tony Beard's Deposition

Transcript), attached as **Plaintiff's Exhibit No. 4,** pp. 109, 110**,** where he

explains in graphic detail, what he experienced and/or witnessed Defendant Officer Jason Schneider doing to him as he was either lying on the ground or being lifted up from the ground. Plaintiff further directs the court's attention to **Plaintiff's Exhibit No. 5**, pp. 66, 68, 69, that being information taken from the Transcript Deposition of Officer Jason Schneider, who himself provides testimony which purports to confirm what his degree of personal involvement was with Mr. Beard following the chase on 9/6/2011.  And finally, the Plaintiff also asked that this court see attached, **Plaintiff's Exhibit No. 24**, Deposition Transcript Testimony of the Co-Defendant, Officer Ryan Losh, at p. 65, lines 15-16, where Officer Losh unequivocally states that both Jason Schneider and himself were the parties that actually conducted the physical pat-down and search of Mr. Beard during the arrest.

3. **As to Officer Ryan Losh:**

The Plaintiff, with respect to this named defendant only, in having now thoroughly reviewed and considered all of the evidence secured to date, including the testimonial evidence of this witness as well as the other nine named Defendant Officers, as to the Plaintiff's 42 USC § 1983, Fourth Amendment U.S. Constitutional claim for "Excessive Force" states that **it does appear** that this particular officer did have sufficient personal

involvement with Mr. Beard on the night in question that would warrant this court finding, that Officer Ryan Losh, based on his own actions, should not now be allowed to escape being determined by the trier of act, personally liable, by simply asserting qualified immunity which would allow him to be dismissed out as a party defendant.

With respect to this particular Co-Defendant, in support of his position, the Plaintiff directs the court's attention to **Plaintiff's Exhibit No. 24**, the Deposition Transcript Testimony of Co-Defendant, Officer Ryan Losh, at p. 65, lines 15-16, where Officer Losh unequivocally states that both Jason Schneider and himself were the parties that actually conducted the physical pat-down and search of Mr. Beard during the arrest. Additionally, the Plaintiff's also wishes to direct the court's attention **Plaintiff's attached Exhibit No. 24**, and the following pages of Officer Ryan Losh's deposition transcript taken on 1/27/2016, during the course of discovery: p. 41, lines 13-15; p. 42; p. 43, lines 14-17; p. 51, lines 20-25; p. 52, line 1; p. 52, line 7-12; P. 53, lines 9-19; p. 58, lines 7-17; p. 61, lines 20-25; p. 62, lines 1-3; p. 62, lines 7-12; p. 62, lines 13-21; p. 64, lines 12-19; p. 65, lines 1-5; p. 65, lines 15-16; p. 74, lines 2-18; p. 75, lines 2-14; p. 76, lines 11-12; p. 77-78; and p. 79, lines 1-22.

    4.    **As to Officer Blake Matall:**

The Plaintiff does now concede, that with respect to this named defendant only, in having now thoroughly reviewed and considered all of the evidence secured to date, including the testimonial evidence of this Defendant as well as the other nine named Defendant Officers, as to the Plaintiff's 42 USC § 1983, Fourth Amendment U.S. Constitutional claim for "Excessive Force" it **does not appear** that this particular officer had any personal involvement on the night in question that would not warrant this court finding that he had qualified immunity and is thus entitled to a summary judgment on this particular claim only.

However, with respect to Plaintiff's claim of ***"failure to intervene",*** he contends that the evidence does warrant, that the court hold that there does exist a genuine issue of material fact to prevent this Defendant from being granted both qualified immunity and summary judgment. In support of his position, the Plaintiff does direct the court's attention to Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**, @ 01:05:45 – 01:06:00 **ECF No. 118**, which clearly shows that there were multiple City of Southfield Police Officers on the scene following the chase.

Therefore, as to this particular Defendant Officer, Mr. Beard alleges, given the facts, Officer Matatall was in a position to have intervened and also had the reasonable means and opportunity to do so seeing that he

had arrived and as on the scene following the chase, with his assigned partner, Officer Ryan Losh. Plaintiff relies on **Burgess v. Fischer, 735 F.3d 462, 475-76 (6th Cir. 2013) and Ontha v Rutherford Cnty., 222 Fed. Apps. 498 (6th Cir. 2007)**

5.   **As to Officer Nicholas Smiscik:**

The Plaintiff does now concede, that with respect to this named defendant only, in having now thoroughly reviewed and considered all of the evidence secured to date, including the testimonial evidence of this witness as well as the other nine named Defendant Officers, as to the Plaintiff's 42 USC § 1983, Fourth Amendment U.S. Constitutional claim for "Excessive Force" it **does not appear** that this particular officer had any personal involvement on the night in question that would not warrant this court finding that he has qualified immunity and is thus entitled to a summary judgment on this particular claim only.

However, with respect to Plaintiff's claim of ***"failure to intervene",*** he contends that the evidence does warrant, that the court hold that there does exist a genuine issue of material fact to prevent this Defendant from being granted qualified immunity and summary judgment as to that claim. In support of his position, the Plaintiff does direct the court's attention to Sergeant Jagielski's Dashboard Camera, filed as **Defendants' Exhibit 5**,

@ 01:05:45 – 01:06:00 **ECF No. 118**, which clearly shows that there were

multiple City of Southfield Police Officers on the scene following the chase.

Therefore, as to this particular Defendant Officer, Mr. Beard alleges,

given the facts, Officer Nicholas Smiscik was in a position to have

intervened and also had the reasonable means and opportunity to do so

seeing that he had arrived and as on the scene following the chase, with

his assigned partner, Officer Kory Karpinisky. Plaintiff relies on **Burgess v.**

**Fischer, 735 F.3d 462, 475-76 (6th Cir. 2013) and Ontha v Rutherford**

**Cnty., 222 Fed. Apps. 498 (6th Cir. 2007)**

6.    **As to Officer Kory Karpinisky:**

The Plaintiff, with respect to this named defendant only, in having

now thoroughly reviewed and considered all of the evidence secured to

date, including the testimonial evidence of this witness as well as the other

nine named Defendant Officers, as to the Plaintiff's 42 USC § 1983, Fourth

Amendment U.S. Constitutional claim for "Excessive Force" states that **it**

**does appear** that this particular officer did have sufficient personal

involvement with Mr. Beard on the night in question that would warrant this

court finding, that Officer Kory Karpinsky, based on his own actions, should

not now be allowed to escape being determined by the trier of act,

personally liable, by simply asserting qualified immunity which would allow

him to be dismissed out as a party defendant. With respect to this particular

Co-Defendant, in support of his position, the Plaintiff directs the court's

attention to **Plaintiff's Exhibit No. 26**, the Deposition Transcript Testimony

of Co-Defendant, Officer Kory Karpinisky, at pp. **21**, lines 2-10; **22**, lines 2-

25; **23**, lines 1-3; **26**, lines 4-22; **31**, lines 10-21; **32**, lines 23-25; and **33**,

Lines 1-18.

### III.   DEFENDANT'S ARE CORRECT THAT INDIVIDUAL ACTING UNDER COLOR OF LAW, ARE ENTITLED TO QUALIFIED IMMUNITY EVEN WHEN THEIR ACTIONS RESULT IN THE USE OF CRUEL AND UNUSUAL PUNISHMENT ASSERTED AGAINST AN INVIDIUAL THAT HAS NOT FORMALLY OBTAINED THE LEGAL STATUS OF "PRISONER"

Plaintiff concedes that, given the circumstances which now form the

basis of his existing 42 USC § 1983 based constitution claims, and to which

he is now pursuing and seeking reasonable compensation for all damages

sustained by him, he does not fall within the selected class of individuals

(i.e. convicted criminals serving actual prison sentences) which would

afford him the right to bring suit for cruel and unusual punishment under the

Eighth Amendment of the U.S. Constitution in this case.

Therefore, if said position was inadvertently, initially asserted in the body

of his amended pleading, as filed on Jan. 6, 2015, via **[ECF Doc # 18]**, then

he does now voluntarily agree to have that claim dismissed and/or strickened from the pleading.

IV.  **INDIVIDUAL DEFENDANTS, ACTING UNDER COLOR OF LAW, ARE NOT ENTITLED TO QUALIFIED IMMUNITY OR ANY OTHER IMMUNITIES WHEN THEIR ACTIONS VIOLATE THOSE SPECIFIC RIGHTS AFFORDED A U.S. CITIZEN, AS PRESCRIBED UNDER THE EQUAL PROTECTION CLAUSE OF THE U.S. CONSTITUTION**

Plaintiff concedes that given either the lack of evidence ultimately discovered, presented and/or that he, by and through his legal counsel, were unable to secure during the course of discovery and/or based on certain formal rulings issued by this court following filed Motions to Compel or otherwise, it appears that he will not, as the non-movant, be able to meet the requisite burden of proof with respect to certain Equal Protection Claims. Therefore, counsel for the Plaintiff, in using my best business judgment and understanding of this area of the law, does now concede that this portion of the Plaintiff claim is hereby strickened from the pleading, and/or dismissed, *with the exception of* his *"RACIAL PROFILING"* claim that was made against Officer(s) Jeffrey Jagielski and Jason Schneider, as well as certain other named Defendant-Officers' improper use of the "N-Word", as a racial slur that was openly used towards the Plaintiff by either Officer(s):  Eric Jachym, Matthew Taylor, Blake Matatall, Ryan Losh, Kory

Karpinsky and Timothy Gougeon, as he was being physically assaulted and battered on 9/6/2011.

With respect to the Defendants' position that Mr. Beard's formal allegations that the "N-Word" was used against him while being physically beaten and tasered, and as such, simply because he is not now able to specifically point to and/or identify which of the six white male police officers mentioned above, my have actually used this very offensive language, does now in some way, afford the Defendant(s) the right to assert qualified immunity and the right to have this sub-part claim be summarily dismissed is totally ludicrous. To do so, would result in extreme prejudice to the Plaintiff, as well as amount to a travesty of justice, given that both Officer(s) Ryan Losh and Kory Karpinsky, did under oath, as sworn and paid Police Officers for a local municipality within the State of Michigan, in the Year of Our Lord 2016, openly attest and admit to the simple, yet deplorable fact, that they have in the past, used this very crippling and disparaging word; as well as called others the "N-Word"; and also referred to African-Americans as such.  Moreover, and even more insulting and/or shocking to any reasonable American's moral conscious, is the fact, that Officer Kapinsky, did have the gall to even go as far as to say on the record, that he didn't personally find the "N-Word" to be offensive,

43

especially since it didn't apply to him. Therefore I, the attorney of record for the Plaintiff, as a U.S. Veteran, American Citizen, attorney and Civil Rights Advocate, wish to make a record that I personally find this stance and attitude, to be both extremely embarrassing, and on a national level, very shameful.

The Plaintiff contends that the very use of the "N-Word", done in the midst of Mr. Beard being physically assaulted and battered on Sept. 6, 2011, does in fact show discriminatory effect and purpose, as required in **Gardenhire v Schubert**, 205 F.3d 303, 318 (6th Cir. 2000); **Farm Labor Org. Comm. V Ohio State Highway Patrol**, 308 F.3d 523, 534 (6th Cir. 2002).** The Plaintiff does also rely upon **Taylor v City of Falmouth**, 187 Fed. Appx 596, 601 (6th Cir. 2006 [See PL Exhibit No. 31];** and does contend that certainly, this particular combination of action and behavior (i.e. the physical assaulting and battering of a African-American male while also referring to him as a "Nigger" back in September of 2011, should prayerfully, be viewed as being something far more than an occasional or sporadic use of racial slurs done by Police Officers who are now being sued.

Furthermore, the Plaintiff does argue that the very Police Officers that exerted such behavior towards him on 9/6/2011, did so, clearly as a

selected and particular course of action, at least in part, "because of", and not merely "in spite of" the adverse effect it would have upon Mr. Beard and his overall race.

In support of the Plaintiff's argument that this portion of his Equal Protection Claim should survive Summary Judgment, the Plaintiff does direct the court's attention to:

-Plaintiff's attached **Exhibit No. 24**, that being the Deposition Transcript Testimony of the Co-Defendant, Ryan Losh, pp. 74, lines 2-18; 75, lines 2-14; 76, lines 11-12 and 21-23; 77, 78 and 79, lines 1-22; and

-Plaintiff's attached **Exhibit No. 26,** that being the Deposition Transcript Testimony of the Co-Defendant, Kory Karpinsky, pp. 31, Lines 10-21; 32, lines 23-25; and 33, Lines 1-18

For in both deposition transcripts cited above and to which are now part of this court's record, both Co-Defendants admitted under oath, to having either used the "N-Word" in the past and/or presently; and then, as for Co-Defendant, Police Officer Kory Karpinsky, that he doesn't even personally find the word to be offensive seeing that this very derogatory and racially charged word, in his own word's, doesn't apply to him.  Mind you, this is now evidence, obtained via sworn testimony, provided by sworn public

servants (i.e. Police Officers), men who, on a daily basis are entrusted to protect and serve members of the general public, that have a right to carry a loaded, unconcealed firearm, and in so doing, receive a regular paycheck, from the taxes paid by American Citizens and citizens of the City of Southfield, County of Oakland, State of Michigan.  As such, the Plaintiff's position, is that if these same Police Officers, in such a brazen fashion, can openly say how they personally don't feel a particular way about such a historically, racially charged, racial slur, then in their professional settings, and while acting under "color of law" as Police Officers for the City of Southfield, who's to doubt, that on 9/6/2011, when Mr. Beard, a legally incapacitated African-American male, was being physically assaulted and battered following a 14:30 minute chase, that they didn't have a problem with using this very toxic and degrading word (i.e. "Nigger") against him.

V.   **INDIVIDUAL DEFENDANTS, ACTING UNDER COLOR OF LAW, ARE NOT ENTITLED TO QUALIFIED IMMUNITY OR ANY OTHER IMMUNITIES WHEN THEIR ACTIONS VIOLATE THOSE SPECIFIC RIGHTS AFFORDED A U.S. CITIZEN, AS PRESCRIBED UNDER THE SUBSTANTIVE DUE PRECESS CLAUSE OF THE U.S. CONSTITUTION**

Mr. Beard, simply contends that the actions of the named Defendant Officers, as specifically indentified in Section III above, did amount to the deprivation of certain fundamental interests of his, as well as his interests in

46

being free from arbitrary and capricious, and/or conscience-shocking actions, regardless of the fairness or adequacy of procedural safeguards. **Range v Douglas**, 763 F.3d 573, 588 (6th Cir. 2014). Again, Mr. Beard most assuredly contends that the use of the "N-Word" directed against him, as he was being physically assaulted and battered by certain co-defendants, as clearly stated in Section III above, should be deemed as conduct that shocks the conscience, and conduct that falls at the high end of the spectrum, intentional in nature, that on its face, could not be said, justifies any legitimate government interest. **Cnty. Of Sacramento v Lewis**, 523 U.S. 833, 846-47 (1998). Moreover, that the conduct involving the parties on the morning of 9/6/2011, as specially alleged by Mr. Beard in his pleadings (i.e. **ECF Doc # 18**, ¶ 24, @ Pg ID 159) and to which he has attested to under oath, (See Transcript of Tony Beard's Deposition, attached as **Plaintiff's Exhibit No. 4**, pp. 106, 111, 112), should certainly qualify, in 2016, as being of the sort, that is the most egregious and outrageous conduct, condemned as conscience-shocking in a constitutional sense. **Braley v City of Pontiac**, 906 F.2d 220, 226 (6th Cir. 1990) *Lewis, 523 U.S. at 846, 847 n. 8;* and also is of the type of conduct that violates the decencies of a civilized community and offends "even hardened sensibilities." ***Rochin v California***, *342 U.S. 165, 172-273 (1952)*

Nevertheless, in having said all of the above, the Plaintiff does concede that it appears that **Braley v City of Pontiac, 906 F.2d 220, 226 (6th Cir. 1990) and Graham v Connor, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2nd 443 (1989)** are controlling on this particular issue, and as such, upon review, if the court finds, that as a matter of law, the Plaintiff's claims have been properly asserted via his U.S. Constitutional Fourth Amendment, "Excessive Force Claim," and thus, that there is no need to analyze this matter via the "shock the conscience" test noted above, then so be it.

VI.   **INDIVIDUAL DEFENDANTS, ACTING UNDER COLOR OF LAW, ARE NOT ENTITLED TO QUALIFIED IMMUNITY OR ANY OTHER IMMUNITIES WHEN THEIR ACTIONS RESULT IN ACTIONS OF "DELIBERATE INDIFFERENCE" ASSERTED TOWARDS A U.S. CITIZEN**

The Plaintiff argues that the facts and evidence presented within the portion of the Defendants' Motion for Summary Disposition, does clearly help to satisfy both the objective and subjective components of **Napier v Madison Cnty., 238 F.3d 739, 742 (6th Cir. 2001)**, as well the law set forth in **Villegas v Metro. Gov't of Nashvill, 709 F.3d 563, 568 (6th Cir. 2013)** For upon reviewing and considering the photographs taken of Mr. Beard's sustained bodily injuries to both his head (i.e. his sustained closed head injury) and facial area, as well as taking into consideration his testimony and the relevant medical records now being presented, his claim for

48

deliberate indifference on the part of the Officer(s) Matthew Taylor and/or Eric Jachym, when they specifically refused to allow him to receive the proper medical evaluations and/or medical plan, for overnight admission and monitoring, as medically recommended on 9/6/2011, with regard to again, his significant trauma(s), including the medically documented closed head injury and multiple displaced fracture of the maxillary sinus bilateral, equivocal irregularity of the right nasal bone, comminuted fracture bilateral pterygoids, that he suffered as a direct result of being severely beaten by those named Defendant Officers identified in Issue III above, has been satisfied at this juncture. (See **Plaintiff's Exhibits No.(s) 4**, pp. 77,78; and **Plaintiff's Exhibit No.(s) 14, 15** and **21**)

In further support of Mr. Beard's claim, relative to this particular issue, he would like to direct the court's attention to **Plaintiff's Exhibit No. 18**, where during the taking of the discovery deposition of Officer Matthew Taylor, Officer Taylor was asked and answered as followed:

**Q:**   Do you determine if whether or not he appeared injured at any point from the time that you are taking him from the end of the chase and to your precinct?

**A:**   He appeared to be injured, yes.

See Deposition Transcript of Matthew Taylor, p. 59, lines 9-12, **Plaintiff's attached Exhibit No. 18.**

Moreover, if the court finds credibility in the testimony provided of Mr. Beard with regard to how the officers reacted to the Providence Hospital medical staff's professional opinions that he be allowed to remain hospitalized, then Mr. Beard further contends that said behavior on the part of the officers, meets the standard of being one, whose state of mind demonstrates deliberateness, tantamount to an intent to punish, as described in **Miller v Calhoun Cnty., 408 F.3d 803, 813 (6th Cir. 2005)**

See attached **Plaintiff's Exhibit No. 21:** copy of Medical Records; and attached, **Plaintiff's Exhibit No. 4,** copy of Tony Beard's Deposition Transcript, pp..77, lines 21-25; 78, lines 1-20.  For in this section of Mr. Beard's discovery deposition he describes and explains the following on the record:

**Page 77:**

21 ….And then when it was time, after I finished

22 getting the tests done on me, they said: Well,

23 Mr. Beard needs surgery.

24 So I know I needed some kind of medical

25 attention where I was going to be there longer than a

**Page 78**

1 day because after what happened. So I'm thinking I'm

2 going to stay there for the surgery. I'll say a

3 couple hours later, he, he looked at her when she came

4 in the room. She said: Well, Mr. Beard needs

5 surgery.

6 And he said: He's not getting surgery, no,

7 he's not staying up here. He going back to the

8 station.

9 And he was very adamant about that when he

10 said it.

11 And she said: Okay. Well, you all can

12 take him if you want.

13 So I'm like: I need to stay up here. I

14 need attention, medical attention.

15 So he snatched the cover off me because I

16 was cold that night after what happened. So he

17 snatched the cover off me and was like: Get up.

18 He was like, he said: Get up, mother

19 fucker. You'll be all right.

20 And I was like, Man, and I went

**Note:**

The "he" that Mr. Beard was referring to above being Officer Matthew

Taylor.

Therefore, with regard to this particular claim, the Plaintiff believes that

the evidence presented, does at the very least, create a genuine issue of

material fact, as to whether or not, Mr. Beard has and/or shall be able to

meet his burden of proof on this issue, and therefore neither qualified

immunity or summary judgment should be granted to the Defendants.

VII.   **INDIVIDUALLY NAMED DEFENDANT-MUNICIPALITIES ARE NOT ENTITLED TO SUMMARY JUDGMENT WHERE IT CAN BE PROVEN THAT IT HAS ESTABLISHED A LONGSTANDING PRACTICE OR CUSTOM THAT VIOLATES AND/OR INFRINGES UPON THE CONSTITUTIONAL RIGHTS OF ANY U.S. CITIZEN AS A DIRECT RESULT OF ITS FAILURE TO TRAIN AND/OR ESTABLISH A WRITTEN POLICY FOR ITS EMPLOYEES THAT WOULD HAVE KNOWINGLY PREVENTED A U.S. CONSTITUONAL VIOLATION**

To date, given the evidence secured by the Plaintiff during discovery,

the Plaintiff would argue to the court, that there is a well-developed record

that now helps to clearly establish that the Defendant-City of Southfield,

over an extended period of time, either: 1.) failed to properly, regularly and

consistently train and/or educate; failed to correct; and/or have available

written departmental policies, which addressed the issue of its Officers'
legal jurisdiction and also of what was legally expected of its Police
Officers, while acting under color of law, with regard to legally versus
wrongfully pursuing any person, without their having been, first established,
reasonable suspicion and/or probable cause; and/or its officers being
allowed to leave their known geographic, jurisdictional limits, for any other
reason other than for that was specifically prescribed by law, (See 764.2a,
attached as **Plaintiff's Exhibit No. 2**),

    The Plaintiff contends that ***should*** the court reach this conclusion
upon its review and analysis of the following evidence:

    **Plaintiff's Exhibit No. 2**;

    **Defendants' Exhibit 5**, @ 00:51:16- 00:51:43 **[ECF No. 118]**;

    **Plaintiff's Exhibit No. 5,** pp. 57, 58;

    **Plaintiff's Exhibit No. 13,** pp. 5-7;

    **Plaintiff's Exhibit No. 22;**

    **Plaintiff's Exhibit No. 23;**

    **Plaintiff's Exhibit No. 25,** p. 11, lines 21-24; p.19, lines 23-25; and
p. 20, lines 1-8;

    **Plaintiff's Exhibit No. 26,** p. 15, 3-7;

    **Plaintiff's Exhibit No. 27;**

**Plaintiff's Exhibit No. 28;**

**Plaintiff's Exhibit No. 29**, p. 29, lines 3-9; p. 41, lines 2-23; and pp. 42, 43;

**Plaintiff's Exhibit No. 30**, p. 19, lines 3-12; p. 23, lines 21-25; and p. 24, line 1.

***then*** the court should also reasonably conclude, that  as a matter of law, the Plaintiff, via the evidence now presented, has established that there, on 9/6/2011 ***was clearly an established custom or practice***, by the City's failure to properly, regularly and consistently train and/or educate; and/or failure to correct; and/or have available, written departmental policies, which addressed the issue of its Officers' legal jurisdiction and also of what was legally expected of its Police Officers, while acting under color of law, with regard to legally versus wrongfully pursuing any person, without their having been, first established, by reasonable suspicion and/or probable cause; and/or its officers being allowed to leave their known geographic, jurisdictional limits, for any other reason other than for that was specifically prescribed by law. In looking at those Plaintiff's Exhibit(s) listed herein, and to which the Plaintiff is now asking the court to consider with regard to ruling on this issue, the court will find strong testimony from employees of the Defendant-City's, that establishes a city "CUSTOM", again, all secured

from its highest level Police Officer, Chief of Police-Eric Hawkins; as well as 3 of the 10 officers being sued, (Officers Katie Schneider, Timothy Gougeon and Kory Karpinski) with these same 3 officers being some of the city's most senior of the named party defendant officers.

The aforementioned testimony certainly helps to provide to this court, very compelling evidence which literally confirms that there was no policy and/or a lack of policy, and thus arguably, *standing custom*, which did not prevent the City's Police Officers, while acting under color of law, from being allowed to leave their respective jurisdiction to then enter into another.

And given the above discovered testimony and evidence, in now applying the rules of law and standards set out in **Monnell v Dep't of Social Servs, 436 U.S. 658, 690-91 (1978)**, to this claim and the facts at hand, the Plaintiff contends that he has now arguably, successfully proven, that an established custom may be attributed to the City of Southfield, which serves as the factual predicate for Mr. Beard's individual municipal liability claim against it.

For if, as Mr. Beard has now properly alleged and testified to, and also to which the City of Southfield's Chief of Police and a certain number of its Police Officer, now named as party defendants have attested to in

55

their depositions, that there is either: City of Southfield Departmental Policy and/or lack of Department Policy; and/or an established custom or practice, that condones and/or ignores, and thus allows to occur on a regular basis, its officers, from strictly adhering to and following the applicable state law (See attached **Plaintiff's Exhibit No. 7 (i.e. MLC 764.2a)** with respect to unreasonably suspecting individuals (i.e. non-felons), such as the Plaintiff, of illegal activity, and thereafter, simply pursuing and chasing said individuals, well outside of its jurisdiction, where such persons, may have only committed a minor traffic offense, all outside of its jurisdiction, but in the presence of one of its officers,  versus a crime to the level required by statute,  in turn amounts to an illegal pursuit and seizure and/or deprivation of a constitutional right. And on this issue alone, in applying the standard set for in **Monell**, the Plaintiff now contends, that at the very minimum, this certainly raises a genuine issue of material fact that a custom of doing the same had been established as of 9/6/2011, and therefore, the City ought not now, be entitled to immunity nor summary judgment.

For the Supreme Court in Monell stated:

"Moreover, although the touchstone of the § 1983

action against a government body is an allegation that

official policy is responsible for a deprivation of rights

56

protected by the Constitution, local governments, by the

very terms of the statute, may be sued for constitutional

deprivations visited pursuant to governmental custom even

though such a custom has not received formal approval through

the body's official decisionmaking channels."

The court went on to state: "Instead, it is when execution of a government's

policy or custom, whether made by its lawmakers or by those whose edicts

or acts may fairly be said to represent official policy, inflicts the injury that

the government as an entity is responsible under 42 U.S.C.S. §1983 .

All of the above is exactly what the Plaintiff is now contending has

occurred in this very instance. And in short, that it is the Plaintiff's present

constitutional claims, which have merely shined the light on this clearly

deplorable and unconstitutionally based CUSTOM of the City of

Southfield's, that has been being exercised, according to its very own, and

most senior officers, for more than two decades now.

Therefore, the Plaintiff does contend that it appears reasonably clear

that the City has failed to adequately train or supervise its employees, who

are  responsible for working with members of the general public, under

color of law, as its law enforcement personnel.

More importantly, in this very instance, what the City of Southfield Police Officers have said, during the taking of their respective depositions, made it plain, that what was done to Mr. Beard on 9/6/2011, ***does not*** appear to amount to an occasional mistake or mistakes, but instead, was an common practice, occurrence, or "A CUSTOM", which in turn, results in illegal stops, searches and seizures on members of the general public, which was exactly what happened in Mr. Beard's case. Secondly, the Plaintiff, further argues that this conduct (i.e. an established custom or practice) on the part of the city's police personnel, amounts to a questionable "deliberate indifference", or said another way, the city's disregard for a known or obvious consequence in failing to train and/or correct its officers that continue to do this very thing; and thirdly, such a custom does expose countless members of the general public to serious infringements upon any person, similar in kind to Mr. Beard's, with regards to insuring the proper protection of one's constitutional right to be free from illegal stops, search and seizures.

Additionally, in light of the events that took place on 9/6/2011, involving Mr. Beard, Plaintiff argues that the City of Southfield did possess the requisite knowledge, but nonetheless, turned a blind eye to a clear and persistent pattern or custom of unconstitutional conduct, being played out

regularly on members of the general public at the hands of its Police Officers. Plaintiff further contends that the particular deprivation of his constitutional rights, as specifically set forth in the body of his complaint, and now attested to via the taking of his deposition, was a highly predictable consequence of the City's failure to equip its officers with specific knowledge and training on this particular matter, which in turn created a custom. And finally, Plaintiff contends that it was certainly the city's failure to provide the proper training and/or clear policy language to address this matter, that was the actual cause for the constitutional violations experienced by him, done all at the hands of the City's inadequately trained police personnel.

As to this particular issue, the Plaintiff believes that the great weight of the evidence that has now been gathered during the course of discovery, that warrants this court either rendering an order, as a matter of law, that is in his favor; and/or making a determination at this juncture, that there does exist, a genuine issue as to a material fact concerning this very issue.

In summary, the Plaintiff would argue, that this Honorable Court, as a matter of law, and pursuant to Fed. R. Civ. P 56(a) and/or (c), consider ruling that the Plaintiff, and not the Defendant, has now, pursuant to the longstanding ruling of **Monell**, established that the City of Southfield has an

established CUSTOM and/or PRACTICE, of allowing it's Police Officers, to wrongfully act outside of its jurisdiction, while acting under color of law, and thus hunt, pursue and harass, members of the general public, in direct violation of every U.S. Citizen's, U.S. Constitutional Fourth Amendment Right to be secure in his person, houses, papers, and effects, against unreasonable searches and seizure, by any government official; and/or in the alternative,  hold, *at the very least*, that given the evidence that is now been presented, that there does appear to exist, a genuine issue of material fact, as to whether, under the rules, standards and/or tests set forth in *Monell*, the City of Southfield, should individually, also be potentially held civilly liable, and thus, this matter be something that the trier of fact, ultimately be allowed to deliberate on. As such, the Plaintiff argues that the City of Southfield's motion, wherein, it is now seeking governmental immunity and summary judgment, should most certainly be DENIED.

**VIII. DEFENDANTS ARE CORRECT THAT INDIVIDUALLY NAMED, DEFENDANT-MUNICIPALITIES, ARE  ENTITLED TO SUMMARY JUDGMENT WHEN IT CANNOT BE PROVEN THAT IT HAS ESTABLISHED A LONGSTANDING PRACTICE OR CUSTOM THAT VIOLATES AND/OR INFRINGES UPON THE CONSTITUTIONAL RIGHTS OF ANY U.S. CITIZEN AS A DIRECT RESULT OF ITS FAILURE TO SUPERVISE ITS EMPLOYEES**

Plaintiff relies upon its argument made in Section VII above (i.e. failure to train) and therefore, based on the evidence secured to date, seeks to clarify his original pled claims, which may have been initiated and/or interpreted as a failure-to-supervise claim.

## **CONCLUSION**

For the above reasons, the Plaintiff does respectfully request that this Honorable Court both DENY IN PART and GRANT IN PART, the Defendants Motion for Partial Summary Judgment.


Respectfully Submitted,

LAW OFFICE OF J.L. HAWKINS, PLLC

By:   /s/ Johnny L. Hawkins
      Johnny L. Hawkins (P48157)
      Attorney for Plaintiff
      2000 Town Center, Ste 1900
      Southfield, Michigan  48075
      Tel:   (248) 819-2500
      Fax:  (248) 436-6833
      Email: Johnny@JLHawkinsLaw.com

Dated:    June 27, 2016

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2016, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is to be served on all counsel or record, via transmission of Notices of Electronic Filings generated by CM/ECF.

LAW OFFICE OF J L HAWKINS PLLC

/s/ Johnny L. Hawkins
Johnny L. Hawkins (P48157)
Attorney for Plaintiff
2000 Town Center, Ste 1900
Southfield, MI  48075
Tel:   (248) 819-2500
Fax:  (248) 436-6833
Email:  Johnny@JLHawkinsLaw.com

DATED:  June 28, 2016