UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONY DEWAYNE BEARD, JR.,
a legally incapacitated person,
by and through JOHNETTE FORD,
his legal guardian,

        Plaintiff,                Civil Action No. 14-13465
                                      Honorable Nancy G. Edmunds
v.                                 Magistrate Judge Elizabeth A. Stafford

ERIC HAWKINS, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART
AND DENY IN PART DEFENDANTS' MOTION FOR PARTIAL
<u>SUMMARY JUDGMENT [R. 118]</u>**

## I.    INTRODUCTION

After leading Southfield police on a Hollywood-style car chase on

September 6, 2011, and then being forcibly apprehended, Plaintiff Tony

Beard, Jr. emerged with a closed head injury, facial fractures, bruising

(forehead, shoulders and left rib), chest abrasions, and scars on his back

from being tasered. [ECF No. 138-22, PageID 4940; ECF No. 138-15,

PageID 4867-71; ECF No. 138-16, PageID 4873-74]. This was Beard's

second closed head injury; his first occurred when he was hit by a car at

age ten, and that injury required the removal of his left frontal lobe. [ECF

No. 138-11, PageID 4785].  As a result, Beard's mother, Johnette Ford, has been his legal guardian since 2001, and he was a mentally incapacitated adult at the time of the incident at issue.  [ECF No. 15-1, PageID 115]. Through Ford, Beard filed the instant lawsuit under 42 U.S.C. § 1983 alleging that ten Southfield police officers violated his constitutional rights during the chase and his subsequent arrest, and that the City of Southfield has violated its duty to adequately hire and train its officers.[1]  [ECF No. 18]. Defendants have filed a motion for partial summary judgment, [ECF No. 118], which the Court **RECOMMENDS** be **GRANTED IN PART AND DENIED IN PART,** leaving remaining excessive force claims arising out of the arrest against Katie Schneider, Ryan Losh, Kory Karpinsky, Matthew Taylor, Eric Jachym and Timothy Gougeon,[2] and an equal protection claim against Taylor.

## II.   BACKGROUND

The events in question took place at around 1:00 a.m., during a power outage.  [ECF No. 118-3, PageID 2246; ECF No. 118-5, PageID

---

[1] The Honorable Nancy G. Edmunds referred this matter for all pretrial matters pursuant to 28 U.S.C. § 636(b).

[2] Defendants do not move for summary judgment of the excessive force claims relating to the arrest in favor of K. Schneider, Taylor, Jachym or Gougeon, which is why the motion is for partial summary judgment. [ECF No. 118, PageID 2073].

2592].  At that time, Officer Jeffrey Jagielski was driving a patrol car with his partner Officer Jason Schneider as the passenger.  [ECF No. 118-4, PageID 2478; ECF No. 118-5, PageID 2591-92].  They belonged to the Tactical Crime Suppression Unit, meaning that they patrolled to proactively look for criminal activity.  [ECF No. 118-5, PageID 2589, 2592, 2628].  J. Schneider and Jagielski were on eastbound Eight Mile at its intersection with Greenfield when they saw Beard's Tahoe heading toward them on northbound Greenfield.  [ECF No. 118-4, PageID 2481; ECF No. 118-5, PageID 2592].  According to the officers, Beard had the right of way at the intersection but suddenly made a slight U-turn to the right across two lanes of traffic, entering an alley south of Eight Mile.[3]  [ECF No. 118-4, PageID 2481; ECF 118-5, PageID 2603-05].

The intersection of Eight Mile and Greenfield forms a boundary between the cities of Detroit and Southfield. J. Schneider testified that, before making the U-turn, Beard's Tahoe hit Eight Mile and thus the boundary of Southfield, but Jagielski testified that Beard's tires never touched Southfield. [ECF No. 118-4, PageID 2492; ECF No. 118-5, PageID 2605].  J. Schneider also said that he had a legal right to pursue anyone

---

[3] There is some discussion in the record and briefing regarding whether Beard turned first into a carwash driveway before heading into the alley, but that distinction is not relevant.

who committed a crime within one mile of Southfield's border. [ECF No. 118-4, PageID 2493].

Suspicious that Beard was driving a stolen vehicle and had turned away to avoid detection upon seeing the patrol car, the officers followed him into the alley in order to check out his license plate number. [ECF No. 118-4, PageID 2497; ECF No. 118-5 Page ID 2611]. The officers' suspicion did not bear out; the Tahoe belonged to Beard. [ECF No. 138-4, PageID 4573]. According to Beard, he turned into the alley because he had dropped his cell phone on the floor and wanted to slow down to pick it up. [ECF No. 118-3, PageID 2320-21]. He says that he did not know that the car pulling behind him was a patrol car because it no markings and the officers did not activate their lights after turning into the alley, so he was scared and tried to speedily drive away. [*Id.*, PageID 2323, 2329-30].[4] His fear was heightened because he had been carjacked and robbed in 2002. [*Id.,* 2330; ECF No. 138-9, PageID 4737]. When Beard sped up, Jagielski followed suit. [ECF No. 118-5, PageID 2621]. Jagielski then activated his siren and lights, but Beard did not stop and the high-speed chase began. [*Id.*, PageID 2362; ECF No. 118-3, PageID 2324-25].

---

[4] J. Scheider and Jagielski agree that the car had no markings and that they did not activate their lights or siren when pulling into the alley. [ECF No. 118-4, PageID 2501, 2503; ECF No. 118-5, PageID 2610-11]

Defendants' brief details the fourteen minute chase, describing Beard's disregard of stop signs and traffic lights as he traveled at speeds from 50 to 80 miles per hour including through residential areas; describing Beard's escape after attempted PIT (precision immobilization technique) maneuvers, which are designed to stop a fleeing car; and noting that as many as nine patrol cars were involved in the chase. [ECF No. 118, PageID 2058-62]. The chase was captured on three dashcam videos. [Exhibit 5, 8, 10].[5] Defendants place emphasis on their claim that, after Officer Katie Schneider performed a successful PIT maneuver that spun Beard's Tahoe around and caused it to come to a momentary halt, Beard drove his Tahoe onto the hood of Officer Eric Jachym's patrol car. [ECF No. 118, PageID 2060-61 (with photos)]. Beard claims that it was Jachym that drove his car into the Tahoe. [ECF No. 118-3, PageID 2335]. But resolution of this factual dispute is not necessary for the determination of the legal claims at issue.

The factual disputes that matter are not captured by the dashcam videos. Specifically, no video captures how Beard's injuries occurred or who caused them. Some facts are not in dispute. Beard says that he put his hands up after K. Schneider told him to do so. [ECF No. 118-3, PageID

---

[5] Exhibits 5, 8 and 10 were filed in the ordinary manner.

2337-38].  K. Schneider, who confirms that she was the first officer to approach Beard, agreed that Beard instantaneously put up his hands when she ordered him to do so.  [ECF No. 138-13, PageID 4821, 4829-30].  All parties agree that Beard's driver's side window was shattered, and that he was pulled out of his Tahoe through that window opening rather than from an open door.  [ECF No. 118-3, PageID 2338; ECF No. 118-8, PageID 2805, 2844, 2878; ECF No. 138-27, PageID 5073; ECF No. 138-25, PageID 4536].  Finally, all agree that, after the arrest was made, there was blood on Beard's face and on the pavement, but none in the Tahoe.  [ECF No. 138-18, PageID 4881-83 (photos); ECF No. 118-3, PageID 2347-48; ECF No. 118-4, PageID 2536; ECF No. 118-5, PageID 2642-43; ECF No. 118-8, PageID 2810, 2821, 2858; ECF No. 138-25, PageID 4981].  With respect to other details of the apprehension and arrest, the accounts differ in material respects.

According to the officers, Beard did not comply with commands to exit the Tahoe, and in fact actively resisted by flailing his arms and anchoring his foot around the steering wheel.  [ECF No. 138-13, PageID 4820; ECF No. 138-25, PageID 4976; ECF No. 118-8, PageID 2805; ECF No. 138-7, PageID 5063; ECF No. 138-19, PageID 4893-94].  However, Jachym testified that he did not know whether Beard intentionally anchored his foot

6

on the steering wheel.  [ECF No. 118-8, PageID 2830-31].  And defendants do not claim that they feared that Beard would harm them; K. Schneider testified that Beard was not assaultive and that she put her gun away once he put up his hands.  [ECF No. 138-13, PageID 4821, 4829].  Thus, at this juncture, it would appear that the officers' efforts were focused on halting Beard's resistance, not on protecting themselves.

To get Beard out of the car, Officers Matthew Taylor, Ryan Losh and Jachym (the latter having entered the Tahoe from the passenger side) forcibly freed Beard's foot.  [ECF No. 118-8, PageID 2805, 2830-31; ECF No. 138-19, PageID 4894-95; ECF No. 138-25, PageID 4976].  Losh and Officer Kory Karpinsky then forcibly pulled him from the Tahoe through the window opening; both Losh and Karpinsky acknowledge taking part in this extraction.  [ECF No. 138-25, PageID 4976; ECF No. 138-27, PageID 5061-62].  K. Schneider testified that she did not know how Beard's driver's window had been shattered, or why he was pulled through the window opening rather than from the door.  [ECF No. 118-8, PageID 2841-42, 2844].

The officers claim that Beard continued to resist being apprehended after he was taken from the Tahoe and was forcefully placed face-down on the pavement.  [ECF No. 118-8, PageID 2844-45, 2878; ECF No. 138-25,

7

PageID 4981; ECF No. 138-19, PageID 4897].  As a number of officers worked to get Beard in handcuffs, K. Schneider tasered him twice using shooting probes, and Gougeon tasered him once without the probes. [ECF No. 118-8, PageID 2856, 2871-72, 2879].  K. Schneider posits that Beard's facial injuries are consistent with his being placed face-down on concrete and forcefully handcuffed, but she could not say "for certain if it was just the concrete or if it was him being hit at that point."  [ECF No. 118-8, PageID 2871-72].

Beard tells a different story.  He says that, after the PIT maneuver stopped his Tahoe and the officers approached, he told them that he was going to keep his hand up and that, "I don't want you all to think I'm reaching for anything or got anything."  [ECF No. 118-3, PageID 2338].  He says that he opened the door some, but that an officer he could not identify slammed the door shut, punched out the window, punched him in the face, snatched him out of the window opening by his neck, and tasered him in the spine when he was halfway out of the window, and that he was then ambushed by the officers. [*Id.*, PageID 2338, 2341].  Beard claims that K. Schneider, J. Schneider, Gougeon and Taylor all tasered him, and that he was assaulted by ten to twelve officers who dragged him from one spot to another.  [*Id.,* PageID 2344, 2347-48].

8

According to Beard, J. Schneider kicked him in the head, Jachym punched him, and Taylor hit and kicked him and told him, "Don't act like you can't move, mother fucker, or we'll beat your black ass again." [*Id.*, PageID 2345, 2347, 2349-50, 2419]. He claims that others called him racially offensive names, but he could not say who, except that he thinks that Gougeon did. [*Id.,* PageID 2342, 2348-49]. Beard could not specify whether Jagielski, Losh, Matatall, Karpinsky or Nicholas Smiscik did anything to him, but said that he knows that some of them kicked him or otherwise "put hands" on him that evening. [*Id.*, PageID 2347, 2352-56]. He points out that it was dark and the officers were not wearing identification that night. [*Id.*]. Although the alleged assault caused Beard injuries, including a closed head injury and facial fractures, he testified that it happened "very quickly." [ECF No. 118-2; PageID 2142; ECF No. 138-22, PageID 4940; ECF No. 138-15, PageID 4867-71; ECF No. 138-16, PageID 4873-74].

The events of September 6, 2011, were followed with Beard being charged and tried in Oakland County Circuit Court. A jury found him guilty of fleeing and eluding the police, resisting and obstructing the police, and possession of marijuana, but he was acquitted of malicious destruction of police property. [ECF No. 67-3, PageID 933]. A state circuit judge granted

an acquittal on the resisting and obstructing charge, finding that the verdict resulted from a miscarriage of justice.  [*Id.*, PageID 934].

## III.   ANALYSIS

Federal Rule of Civil Procedure 56 provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986); *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

If the movant satisfies its burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Celotex*, 477 U.S. at 324; *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001).  "'The failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'"  *Alexander*, 576 F.3d at 558 (quoting

10

*Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).  "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."  *Id.* at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

In his amended complaint, Beard alleges that Southfield violated its duty to implement, monitor, hire and adequately train its officers.  [ECF No. 18, PageID 161-62].  Invoking the Fourth, Eighth and Fourteenth Amendments, Beard claims that the defendant officers violated his rights of due process and equal protection; that he was subjected to an illegal search and seizure, and excessive force; that he suffered from cruel and unusual punishment; and that the "bystander" Officers K. Schneider, Jachym, Gougeon, Taylor, Losh, Matatall, Smiscik and Karpinsky failed to intervene to prevent harm to him. [*Id.*, PageID 162-66]. Beard now concedes that summary judgment should be granted with respect to his substantive due process claim, and his Eighth Amendment claim has been stricken.  [ECF No. 138, PageID 4547; ECF No. 155, PageID 6206].

In their motion, defendants argue that summary judgment should be granted with respect to Beard's claims of unlawful seizure, equal protection, failure to train and failure to supervise.  They argue that summary judgment of the excessive force claim should be granted in full as it relates to the

11

chase, and should be granted in part as it pertains to the arrest.  Regarding the excessive force claim arising out of the arrest, defendants contend that summary judgment should be granted in favor of the officers who were not identified in his amended complaint as taking part in the arrest, and in favor to the officers who Beard could not testify were directly involved in the alleged assault.  They further argue that Beard failed to adduce evidence that any officer not directly involved in the alleged assault had an opportunity to intervene.

Defendants bolster each argument by claiming qualified immunity. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (citations and internal quotation marks omitted). Determining the applicability of qualified immunity requires a two-step inquiry into whether the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005).  In this case, defendants' qualified immunity arguments are indistinguishable from their claims that they did not violate Beard's constitutional rights.  So to the

12

extent that Beard has failed to adduce sufficient evidence pertaining to his constitutional claims to survive a Rule 56 motion, summary judgment is also warranted on qualified immunity grounds.

For the reasons stated below, defendants' motion should be granted in part and denied in part.

## A. Alleged Unlawful Seizure

Defendants argue that summary judgment of Beard's unlawful seizure claim should be granted under the "*Heck* doctrine."  Beard responds that the officer had no probable cause to stop him, and that J. Schneider's hunch that he had stolen his Tahoe did not amount to reasonable suspicion.  [ECF No. 138, PageID 4525-26]. He also accuses J. Schneider of falsely stating that he (Beard) crossed the boundary into Southfield prior to the alleged U-turn in order to establish jurisdictional authority.  [*Id.*, PageID 4526-28].  Beard contends that, since his alleged illegal U-turn was not in Southfield's actual jurisdiction, the officers did not have a legal basis to "even engage with Beard in the first place." [*Id.*, PageID 4527-28].   Beard's arguments are without merit.

By focusing on the point at which J. Schneider and Jagielski initially engaged Beard by following him into the alley, Beard misapprehends when a constitutional seizure occurred.  As Beard admits, the officers did not

13

activate their lights or siren or otherwise direct him to halt when they followed him into the alley.  [ECF No. 118-3, PageID 2329-30; ECF No. 118-4, PageID 2501, 2503; ECF No. 118-5, PageID 2610-11].  Although J. Schneider and Jagielski's act of following Beard into the alley may have been intimidating, "this kind of police presence does not, standing alone, constitute a seizure."  *Michigan v. Chesternut*, 486 U.S. 567, 575 (1988). Beard was not actually "seized" until K. Schneider's PIT maneuver stopped his car.  *California v. Hodari D.*, 499 U.S. 621 (1991) (when defendant fled in response to officers' show of authority, he was not seized until he was tackled by the officers).

Thus, by the time that Beard was seized, he had been driving at excessive speeds and, as a jury found, fleeing and eluding the police. [ECF No. 67-3, PageID 933].  The jury's verdict bars Beard's unlawful seizure claim, because it would necessarily imply the invalidity of the fleeing and eluding conviction.  *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (a § 1983 suit for damages that would render a conviction invalid requires proof that the conviction has been reversed, expunged or declared invalid).  The *Heck* Doctrine precludes both Beard's arguments that J. Schneider and Jagielski had no lawful right to arrest him outside of Southfield and that they had no probable cause to stop him, because the

14

jury was required to find that the officers were acting in "lawful performance" of their duties and that Beard had unlawfully fled from the officers.  M.C.L. § 257.602a(1) & (3); *People v. Hassan Adel Mohsen*, No. 318769, 2015 WL 728558, at *2 (Mich. Ct. App. Feb. 19, 2015).

Moreover, even if the officers lacked jurisdiction under state law to pursue or arrest Beard outside of Southfield, the Fourth Amendment was not implicated.  *United States v. King*, 466 F. App'x 484, 488 (6th Cir. 2012) (defendant's motion to suppress because Lakewood, Ohio officers arrested him in Cleveland, Ohio lacked merit, as "jurisdictional defects do not amount to per se violations of the Fourth Amendment.").  And even if Beard had a meritorious argument that he was seized when the officers initially engaged him, fleeing an officer constitutes an intervening act that justifies an arrest and purges the taint of an initial illegal stop.  *United States v. Allen*, 619 F.3d 518, 526 (6th Cir. 2010) ("It is widely recognized that if a suspect's response to an illegal stop is itself a new, distinct crime, then the police constitutionally may arrest the suspect for that crime." (citation, internal quotation marks and brackets omitted)).

For these reasons, summary judgment of Beard's unlawful seizure claim should be granted.

15

## B. Excessive Force Claim – Chase

In their motion, defendants cite *Scott v. Harris*, 550 U.S. 372 (2007), as precluding any claim by Beard that they used excessive force in chasing him and using the PIT maneuver to stop his Tahoe.  In *Scott*, the Court ruled, "A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Id.* at 386.  Beard did not address defendants' *Scott* argument in his response, so he has waived any claim that defendants' efforts to terminate the chase constituted excessive force. *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (failure to develop argument in response to motion for summary judgment constitutes waiver). And even if Beard did not waive that argument, the holding of *Scott* is dispositive, and summary judgment of Beard's excessive force claim as it relates to the chase should be granted.

## C. Equal Protection – Racial Profiling

Beard's asserts that J. Schneider and Jagielski racially profiled him, in violation of his equal protection rights.  But the cases he cites for his racial profiling establish that he must show that similarly situated individuals of a different race were treated differently.  *Farm Labor Org. Comm. v. Ohio*

16

*State Highway Patrol*, 308 F.3d 523, 534 (6th Cir. 2002); *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).  Beard has put forth no such evidence, and summary judgment of Beard's racial profiling claim should be granted.

### D. Excessive Force – Arrest
### (J. Schneider and Jagielski)

Defendants move for summary judgment of Beard's excessive force claim against J. Schneider and Jagielski as it relates to the arrest, pointing out that Beard did not allege in his amended complaint that either participated in the alleged constitutional violations that occurred during the arrest.  [ECF No. 118, PageID 2089, citing ECF No. 18, PageID 158-59].  Defendants assert that the complaint failed to give J. Schneider or Jagielski "fair notice" that they are subject to an excessive force claim as a result of the manner of the arrest.  *See In re Commonwealth Institutional Sec., Inc.*, 394 F.3d 401, 405 (6th Cir. 2005) ("Even under our liberal pleading standards, a plaintiff must at least give the defendant fair notice of what the claim is and the grounds upon which it rests, by providing either direct or inferential allegations respecting all the material elements to sustain a recovery." (citations and internal quotation marks and brackets omitted).

Beard concedes that there is no evidence that Jagielski participated in the alleged assault, but states that the evidence suggests that J.

Schneider was personally involved.  [ECF No. 138, PageID 4532, 4534-35].

Beard did testify in his deposition that J. Schneider kicked him in the head.

[ECF No. 118-3, PageID 2345, 2419].  But the issue raised by defendants

is not what the evidence shows, but whether Beard's amended complaint

raised an excessive force claim against J. Schneider arising out of the

arrest.  On this issue, *McColman v. St. Clair Cty.*, 479 F. App'x 1 (6th Cir.

2012), is instructive.

In that case, the court found that the naked reference to excessive

force in the complaint could not be "construed as an allegation that Doan

used excessive force in placing handcuffs too tightly on McColman's

wrists." *Id.* at * 5.  Since the plaintiff had never moved to amend her

complaint to properly raise the issue, the claim that the defendant had used

excessive force in handcuffing the plaintiff could not be considered.  *Id.* at

*6.

Here, J. Schneider is among the defendants referred to in Count II of

the amended complaint, which generically includes a claim of excessive

force.  [ECF No. 18, PageID 162-63].  But Beard's factual pleadings do not

allege that J. Schneider participated in any of the alleged constitutional

violations that occurred during the arrest. [*Id.,* PageID 158-59].  Where, as

here, J. Schneider objects to being tried on a claim of excessive force, and

18

Beard has not moved to amend his complaint to properly plead such a claim against J. Schneider, summary judgment in J. Schneider's favor on the issue is warranted.  *McColman,* 479 F. App'x at *6.  Summary judgment on this issue should be also entered in Jagielski's favor given that the claim was not properly raised against him in the amended complaint either, and given Beard's concession that he was not personally involved in the arrest.

### E. Excessive Force – Arrest<br>(Matatall, Smiscik, Karpinsky and Losh)

The use of excessive force during an arrest constitutes a violation of the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Whether a defendant has used excessive force in violation of the Constitution requires consideration of "the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight."  *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007). "Relevant considerations include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  *Id.* (quoting *Graham,* 490 U.S. at 396).  Each defendants' action must be assessed individually, and mere presence at the scene is insufficient.  *Binay v. Bettendorf*, 601 F.3d 640, 651 (6th Cir. 2010).  Thus,

19

summary judgment should be granted in favor of any officer for which there is insufficient evidence that that he or she "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (internal citations omitted).

Defendants argue that Beard did not ascribe any direct involvement in the alleged excessive force to Matatall, Smiscik, Karpinsky and Losh, and that these officers can therefore only be held liable if they failed to intervene despite the means and opportunity to do so. [ECF No. 118, PageID 2089-90]. Beard concedes that there is no evidence that Matatall or Smiscik were personally involved, but maintains that the evidence is sufficient to go forward on an excessive force claim against Karpinsky and Losh. [ECF No. 138, PageID 4535-40]. On this issue, the Court agrees with Beard.

While Beard did say that he could not specify whether Karpinsky or Losh assaulted him, he was adamant that officers whose names he did not know took part in the alleged excessive force. [ECF No. 118-3, PageID 2352-56]. Beard pointed out that it was dark at the time of the alleged beating, and the officers were not wearing identification. [*Id.*]. Further,

20

both Losh and Karpinsky admit that they took part in forcibly pulling Beard
from the Tahoe, and Losh admits to taking part in forcefully placing Beard
on the ground face-down.  [ECF No. 138-25, PageID 4976, 4982; ECF No.
138-27, PageID 5061-62].  This testimony creates a question of fact
regarding whether Losh and Karpinsky were personally involved in the
alleged constitutional violation, for two reasons.

First, the Sixth Circuit has held that the type of evidence established
here is sufficient to create an issue of fact.  In *Binay*, it had been
"exceedingly difficult" for the plaintiffs to precisely identify the officers who
allegedly used excessive force during the execution of a search warrant
because the officers had worn masks.  601 F.3d at 651.  An officer moved
for summary judgment, arguing that he was merely present at the scene.
But the district court found that because the officer "was in the room with
Plaintiffs during the interrogation and at the time Plaintiffs were handcuffed,
a question of fact remains as to whether he was involved in the
constitutional violation."  *Id.*  The Sixth Circuit upheld this holding.  *Id.*

Similarly, in *Pershell v. Cook*, 430 F. App'x 410, 416 (6th Cir. 2011),
the plaintiff could not see the officers standing above and behind him while
he was sustaining blows to his body, but "he provided significant
information about the location and conduct of the officers based on his own

sensory observations. Further, the officers themselves provide accounts of the incident." This provided "the jury with sufficient information to determine the liability of each individual defendant for the alleged constitutional violation." *Id.* And the district court in *McLeod v. Benjamin*, No. 1:15-CV-639, 2016 WL 6947546, at *6 (W.D. Mich. Nov. 28, 2016), found that the plaintiff's testimony created an issue of fact with respect to three officers even though the plaintiff could not specify which one of them had used excessive force. The court reasoned that each of those officers had worn body armor and carried long guns, just like the alleged wrongdoer the plaintiff had described. *Id.*

Here, although Beard could not identify the precise actions of Losh or Karpinsky, he detailed what he perceived during the arrest as excessive force, and the officers placed themselves at the immediate scene of the events, raising a question of fact regarding whether they had personal involvement in the alleged constitutional violation. *Binay*, 601 F.3d at 651; *Pershell,* 430 F. App'x at 416.

Secondly, Beard's allegations of excessive force include a claim that he was pulled out of the Tahoe through the window opening by his neck before being forcibly placed faced face-down on the cement. [ECF No. 118-3, PageID 2338, 2341]. Losh and Karpinsky admit that these actions

22

occurred, except Losh denied pulling Beard out by his neck and Karpinsky said that he does not remember whether he did.  [ECF No. 138-25, PageID 4976; ECF No. 138-27, PageID 5062].  Defendants admit that pulling Beard out of the Tahoe and forcefully placing him on the ground face-down resulted in injuries.  Losh attributed the blood on Beard's face to that activity, and K. Schneider testified that Beard's facial injuries may have resulted from being forcibly handcuffed or from being hit.  [ECF No. 138-25, PageID 4981; ECF No. 118-8, PageID 2871-72].  And it is undisputed that the injuries Beard sustained from this arrest were serious, including a closed head injury, facial fractures, bruising on his face and body, chest abrasions, and scars on his back from being tasered.  [ECF No. 138-22, PageID 4940; ECF No. 138-15, PageID 4867-71; ECF No. 138-16, PageID 4873-74].  Given this evidence, a jury may determine that Losh and Karpinsky participated in an arrest that was effectuated with excessive force.

To determine whether the force used was excessive, the jury must consider the crime known to the officers at the time (fleeing and eluding), the evidence that Beard posed no immediate threat to them as demonstrated by the fact that K. Schneider put her gun away, the evidence that he was no longer attempting to flee, and Beard's claim that he was not

resisting at the time that Losh and Karpinsky forcefully pulled him through the window opening, and Losh forcefully placed Beard on the ground face-down.  *Fox v. DeSoto*, 489 F.3d at 236.  The jury may thus decide that manner of the arrest was objectively unreasonable and that Losh's and Karpinsky's were personally involved in the alleged constitutional violation, so summary judgment of the excessive force claim with respect to Losh and Karpinsky should therefore be denied.

### F.  Failure to Intervene
### (Jagielski, Matatall and Smiscik)

Although Beard concedes that there is no evidence that Jagielski, Matatall or Smiscik were personally involved in the arrest or alleged beating, he nonetheless contends that they failed in their duty to intervene. The Court should not consider this argument against Jagielski because the amended complaint does not describe him as having participated in the arrest and does not include him in the failure to intervene count.  [ECF No. 18, PageID 158-59; 165].  Thus, Jagielski was not given fair notice that he was charged with failing to intervene, and he now objects to being tried on that claim.  [ECF No. 142, PageID 5386].  Summary judgment should therefore be granted in Jagielski's favor on the failure to intervene claim. *McColman*, 479 F. App'x at *6.

To sustain his failure to intervene claim against Matatall and Smiscik,

24

Beard must show that the officers "observed or had reason to know that excessive force would be or was being used" and "had both the opportunity and the means to prevent the harm from occurring." *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (citation and internal quotation marks omitted).  In *Burgess*, the plaintiffs failed to sustain their burden because "they failed to demonstrate that the incident lasted long enough for Sortman or Jordan to both perceive what was going on and intercede to stop it." *Id.* Beard likewise fails to sustain his burden.

Beard argues that Matatall and Smiscik were at the scene following the chase, [ECF No. 138, PageID 4537-39], but provides no evidence that they had the opportunity or means to prevent the alleged assault that Beard concedes happened "very quickly." [ECF No. 118-2; PageID 2142].  Thus, summary judgment of the failure to intervene claim should be entered in Matatall and Smiscik's favor.

## G. Equal Protection – Racial Epithet

In his amended complaint, Beard alleges that a racial epithet was directed at him during the arrest by one or more of the following officers: Jachym, Gougeon, Taylor, Losh, Matatall, Smiscik or Karpinisky.  [ECF No. 18, PageID 159].  Defendants argue that neither J. Schneider nor Jagielski were given fair notice in the amended complaint that they violated his equal

25

protection rights by using a racial epithet.  The Court agrees, and summary judgment of the equal protection claim based upon the use of a racial epithet should be granted in those officers' favor.  *McColman*, 479 F. App'x at *6.

Defendants contend that the officers who were named as possibly using the racial epithet should also be granted summary judgment because Beard testified that he did not know which of them used a slur except that he thinks that Gougeon did.  [ECF No. 118, PageID 2096, citing ECF No. 118-3, PageID 2342, 2348, 2423-24].  Defendants do acknowledge that Beard testified that Taylor told him that the officers would "beat his black ass again" if he acted like he could not move, but they fail to note that Beard testified that that statement was allegedly made in conjunction with Taylor tasering and assaulting him.  [ECF No. 118, PageID 2097, citing ECF No. 118-3, PageID 2309, 2349].  Beard emphasizes in his response that Losh and Karpinsky testified to using the N-word at unspecified times in the past, but they testified that they did not use that epithet during Beard's arrest.  [ECF No. 138, PageID 4542, citing ECF No. 138-25, PageID 4984-85; ECF No. 138-27, PageID 5071-74].

The use of a racial epithet alone does not violate the Equal Protection Clause of the Fourteenth Amendment, but it can when coupled with some

other constitutional violation.  *Taylor v. City of Falmouth*, 187 F. App'x 596, 601 (6th Cir. 2006); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000); *Price v. Lighthart*, No. 1:10-CV-265, 2010 WL 1741385, at *2 (W.D. Mich. Apr. 28, 2010) (collecting cases).  If Beard demonstrates that racial epithets were directed at him during the physical assaulted, he would not be required to prove that similarly situated individuals of a different race were treated differently.  *Ali v. Connick*, 136 F. Supp. 3d 270, 278-80 (E.D.N.Y. 2015) (collecting cases).  In *Ali*, summary judgment of the plaintiff's equal protection claim was denied because the plaintiff had testified that the defendant used racial or ethnic slurs while subjecting him to excessive force, even though the defendant denied the allegation and even though the plaintiff's testimony about the exact words the defendant used was ambiguous.  *Id.* at 281.  The court found that that ambiguity went to the plaintiff's credibility, which was a matter to be resolved by the jury.  *Id.*

Here, Beard's testimony that Taylor threatened to beat his "black ass" while physically assaulting him is sufficient to survive summary judgment. *Id.*  However, summary judgment should be granted in favor of Gougeon with respect to the equal protection claim. "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to survive summary judgment; "there must be evidence on which the jury could

27

reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252.  Unlike in *Ali*, where the plaintiff testified that the defendant used a racial or ethnic slur but was unsure about the exact words, Beard is unsure that Gougoen made any racial slur at all, and there is thus insufficient evidence upon which a jury could reasonably find that he did.

There is no evidence upon a reasonable jury could find that Jachym, Losh, Matatall, Smiscik or Karpinisky used a racial slur because Beard could not say that they did, and his mere speculation that they may have is insufficient.  *Jenkins v. Cty. of Washington*, 126 F. Supp. 3d 255, 275 (N.D.N.Y. 2015).  Further, Losh's and Karpinsky's testimony that they used a racial slur at unspecified times is irrelevant and inadmissible.  Fed. R. Evid. 404(b)(1); *Flagg v. City of Detroit*, 827 F. Supp. 2d 765, 798 (E.D. Mich. 2011), aff'd, 715 F.3d 165 (6th Cir. 2013). For these reasons, summary judgment should be granted in favor of all of the defendants except Taylor with respect to Beard's equal protection claim pertaining to the alleged racial epithet.

### H. Municipal Liability

Beard asserts a claim of municipal liability against Southfield in his amended complaint, but the Court agrees with defendants that Beard's response to their motion for summary judgment fails to properly analyze his

municipal liability claim.  [ECF No. 138, PageID 4551-59].  Municipal

liability arises only where "the challenged conduct occurs pursuant to a

municipality's 'official policy' such that the municipality's promulgation or

adoption of the policy can be said to have 'caused' one of its employees to

violate the Plaintiff's constitutional rights."  *D'Ambrosio v. Marino*, 747 F.3d

378, 386 (6th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S.

658, 692 (1978)).  To succeed on a municipal liability claim, the Sixth

Circuit requires a plaintiff to: (1) identify the municipal policy or custom, (2)

connect the policy or custom to the municipality, and (3) show that his

particular injury was caused by execution of that policy or custom.  *Turner*

*v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005). Beard provided none of

this analysis.

Instead, Beard lists exhibits that the Court should view and then

"reasonably conclude, that as a matter of law, the Plaintiff, via the evidence

now presented, has established that there, on 9/6/2011, **was clearly an**

**established custom or practice**, by the City's failure" to properly train its

officers.  [*Id.*, PageID 4552-53 (emphasis in original)].  He follows with more

conclusory arguments, such as that the "aforementioned testimony

certainly helps to provide to this court, very compelling evidence which

literally confirms that there is no policy and/or a lack of policy, and thus

arguably, *standing custom*, which did not prevent the City's Police Officers" from leaving their jurisdiction and entering another.  [*Id.,* PageID 4554 (emphasis in original)].  Yet Beard does not explain how the evidence he listed demonstrates a custom or policy that is connected to Southfield, how such a custom or policy caused his injury or, most glaringly, that officers violate the Constitution by leaving their jurisdiction.

Beard's failure to develop his argument in favor of his municipal liability claim operates as a waiver.  *McPherson*, 125 F.3d at 995. Additionally, it appears that Beard's municipal liability argument is focused on his seizure claim, but since the officers are entitled to summary judgment on the seizure claim, so too is Southfield.  *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) ("There can be no *Monell* municipal liability under § 1983 unless there is an underlying unconstitutional act."). Summary judgment of Beard's municipal liability claim should be granted.

## IV.   Conclusion

For the foregoing reasons, defendants' motion for partial summary judgment **[ECF No. 118]** should be **GRANTED IN PART AND DENIED IN PART.**  Specifically, summary judgment should be granted with respect to the following claims: substantive due process; unlawful seizure; excessive force as it relates to the police chase; equal protection as it pertains to the

racial profiling; excessive force against J. Schneider, Jagielski, Matatall and Smiscik pertaining to the arrest; failure to intervene; equal protection against J. Schneider, Jagielski, Jachym, Gougeon, Losh, Matatall, Smiscik and Karpinsky regarding the racial epithet; and municipal liability against the City of Southfield.  Summary judgment should be denied for the following claims: excessive force arising out of the arrest against Losh and Karpinsky, and equal protection in connection with the racial epithet against Taylor.  Should this recommendation be adopted, left remaining would be the excessive force claims against K. Schneider, Losh, Karpinsky, Taylor, Jachym and Gougeon, and an equal protection claim against Taylor.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: December 15, 2016

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each objection must be labeled as "Objection #1," "Objection #2," etc., and must specify precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, the non-objecting party must file a response to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be concise and proportionate in length and complexity to the objections, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 14, 2016.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager