UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONY BEARD, Jr., a legally incapacitated
individual, by and through JOHNETTE
FORD, his guardian,

      Plaintiff,

v.

KATIE SCHNEIDER, ERIC JACHYM,
TIMOTHY GOUGEON, MATTHEW
TAYLOR, RYAN LOSH, and KORY
KARPINSKY,

      Defendants.
      _____/

Case No. 14-13465

Honorable Nancy G. Edmunds

**<u>OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SANCTIONS AGAINST FORD [208], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEY FEES AND COSTS [214], AND GRANTING DEFENDANTS' MOTION FOR ENFORCEMENT OF SANCTIONS AGAINST HAWKINS [212]</u>**

Johnette Ford ("Ford") brought this 42 U.S.C. § 1983 civil rights action on behalf of her adult son Tony Dewayne Beard, Jr. ("Beard") claiming police had violated his constitutional rights in the process of arresting him on September 6, 2011, after a fourteen minute car chase. Prior to trial, the Court granted in part Defendants' motion for summary judgment and then presided over the jury trial from December 5, 2017 through December 15, 2017 on the continuing counts. At its conclusion, the jury held that the five remaining defendants ("Defendants") had no liability to Beard. Before the Court now are three Defendants motions.

Defendants' motion for attorney fees [214] seeks that Plaintiff pay all of Defendants' costs related to the entire suit. Defendants' seek sanctions against Ford for her conduct on the eve of and during the trial in their motion for sanctions [208]. Finally, Defendants' ask the Court to enforce a previously issued Court ordered sanction totaling $18,455 against Attorney Hawkins [212]. The Court held a hearing on this matter on Wednesday, April 25, 2018. For the reasons stated below, Defendants motion for attorney fees [214] is GRANTED in part and DENIED in part, Defendants motion for sanctions against Ford is DENIED [208], and Defendants motion for enforcement of sanctions against Attorney Hawkins is GRANTED [212].

## II. Defendants' Motion for Attorney Fees

1. Legal Standard - Attorney Fees

42 U.S.C. § 1988, entitles a prevailing party in §§ 1983 civil rights actions to reasonable attorney fees as part of costs, at the discretion of the trial court. 42 U.S.C. § 1988(b). While a trial court often awards a prevailing plaintiff attorneys' fees, prevailing defendants are held to a different standard. "A prevailing defendant should only recover upon a finding by the district court that 'the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Wayne v. Village of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978))[1]. *See also Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (stating "[t]he

---

[1] In *Christiansburg*, the Supreme Court was discussing the attorney fee provision in Title VII, not § 1988. The Sixth Circuit however has held that "Congress intended that the standards for awarding fees under section 1988 should be the same as those under Title VII and other acts allowing awards of attorneys fees." *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 182 (6th Cir. 1985).

plaintiff's action must be meritless in the sense that it is groundless or without foundation. The fact that plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of a fee."); *Tarter v. Raybuck*, 742 F.2d 977, 985-86 (6th Cir. 1984) (applying *Christiansburg* standards to a § 1983 case). The Supreme Court further held in *Christiansburg* that the Court must not use *post hoc* reasoning or hindsight logic to determine if the initial complaint had foundation.

> This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. . . .the course of litigation is rarely predictable. . . .Even when the law or facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit. . . .To take the further step of assessing attorney's fee against plaintiffs simply because they do not finally prevail would substantially add to the risks in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions.

*Christiansburg*, 434 U.S. at 421-22. The Sixth Circuit holds "[a]n award of attorney's fee against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 635 (6th Cir. 2009) (quoting *Jones v. The Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986))

Courts look to the factual circumstances and a plaintiffs' basis for bringing their particular suit, to determine if the initial claim was frivolous. *Smith*, 754 F.2d at 183. Within the Sixth Circuit, a plaintiff's belief of an injury, and some evidence to support this belief, is an adequate basis for filing suit. *Sprague v. Forystek*, No. 05-73977, 2007 WL 2812300, (E.D.Mich. Sept.26, 2007) (Hood, J.) *See Smith*, 752 F.2d at 182-83. "The Sixth Circuit has also pointed to factors such as defendant's failure to file a motion for dismissal as

3

indicative of the fact that the claim was not groundless from the outset." *Sprague*, 2007 WL 2812300, *2 (E.D.Mich. Sept.26, 2007) (referencing *Riddle v. Egensperger*, 266 F.3d 542, 550 (6th Cir.2001)). When a claim is "frivolous, unreasonable, or groundless," Defendants can use Rule 12(b)(6) to narrow the claims or dismiss the action "at the onset of the case, rather than engaging in extensive discovery in order to 'obtain' summary judgment." *Riddle*, 266 F.3d at 551.

    2. Analysis - Attorney Fees

Defendants seek all attorney fees and costs associated with Defendants' representation in the litigation, including $348,066.24 in attorney fees and another $61,526.24 in costs, on the theory each of Plaintiff's allegations was frivolous. (Dkt. 214, at 10-11; PgID 7037-38.) Defendants' motion is an overreach. Portions of Plaintiff's case survived summary judgment and went to trial, which is incongruous with identifying those remaining claims as frivolous. The Sixth Circuit refuses to call even inadequate claims frivolous unless the failing is egregious. *See Sprague*, 2007 WL 2812300 at *2 (E.D.Mich. Sept.26, 2007). Beard's claims that survived summary judgment, presented genuine issues of fact and sufficiently sound legal theory, that they could not be resolved even with discovery but required a jury as fact finder to resolve. *Riddle*, 266 F.3d at 552 and *Smith*, 754 F.2d at 182 (in which the Sixth Circuit opined that belief of injury and some evidence to support it provided adequate basis for filing suit.).

Several of Plaintiff's other claims that failed at summary judgment also do not meet the Sixth Circuit's standard that the claims be groundless or their failing egregious. *See Smith*, 654 F.2d at 183 ("[T]he mere fact that allegations prove legally insufficient to require a trial does not, for that reason alone, render a complaint groundless."); *see also Hughes*,

4

449 U.S. at 15-16 (1980) ("Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation' as required by *Christiansburg*."). Defendants assert that Plaintiff never established evidence against each of the individual defendants named in the complaint. However, the Court must only consider Plaintiff's perspective at the time of filing the complaint. Plaintiff could reasonably have believe that other officers participated in the alleged behavior and only through discovery narrow his allegations to specific officers.

Similarly, Beard's municipal liability claim against Southfield was not frivolous when originally filed, despite the Court later dismissing it at summary judgment for failing to properly analyze the claim. Municipal liability arises only where "the challenged conduct occurs pursuant to a municipality's 'official policy' such that the municipality's promulgation or adoption of the policy can be said to have 'caused' one of its employees to violate the plaintiff's constitutional rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). To succeed on such a claim, a plaintiff must find a clearly established custom or practice of the municipality to fail to properly train its officers. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005). The discovery process is necessary to determine whether such a custom or practice exists. Although Beard provided none of the necessary analysis to support his claim at summary judgment, his original legal theory was not so outlandish, facially unreasonable, or frivolous that he may not have developed evidence in discovery to support it.

Beard's equal protection claim which asserts Defendants Schneider and Jagielski racially profiled him, in violation of his equal protection rights, is similar, since it too required discovery to determine its viability. Equal protection claims require proof similarly situated

individuals of a different race were treated differently. *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3dd 523, 534 (6th Cir. 2002); *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). Only through discovery could Beard hope to establish how similarly situated individuals were treated. Although Beard did not manage to put forward such facts, at the time Plaintiff filed his complaint, it was reasonable to believe he would discover facts to support it.

Finally, Beard's failure to intervene claim also proved legally insufficient only after discovery. A failure to intervene claim requires a plaintiff show that the officers "observed or had reason to know that excessive force would be or was being used" and "had both the opportunity and the means to prevent the harm from occurring." *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (citation and internal quotation marks omitted). The Court dismissed this at summary judgment because Plaintiff failed to establish the officers in question had the opportunity to intervene. However, this too required discovery to determine and at the time Plaintiff filed his complaint could reasonably be pursued.

In hindsight all of Plaintiff's above complaints were doomed, particularly given no excessive force was ever established, however this is just the type of *post hoc* reasoning or rationalization the Supreme Court cautioned against in *Christiansburg*, 434 U.S. at 421-22. None of the above claims were based on a set of untrue facts, only unknown ones. Plaintiff was arrested and suffered some injuries during that arrest. Only through the course of discovery, litigation, and the final outcome of the trial, do we now know how to describe the substance of that arrest and the extent of his injuries. Defendants' request for attorney fees as pertain to these counts is "post hoc reasoning" and does not deal with what is at issue here, Beard's basis for filing the original claims, not the ultimate outcome

of the case. The above claims were not frivolous or egregiously brought and Defendant as prevailing party is not entitled to attorney fees.

Only two of Plaintiff's claims lacked any reasonable factual or legal basis from the beginning and consequently attorney fees pertaining to them specifically are awarded. The Court quickly dismissed each at summary judgment, although would have preferred they had been handled under a 12(b)(6) motion at the outset. First, Plaintiff's claim for unlawful seizure "misapprehend[ed] when a constitutional seizure occurred." (Dkt. 165, at 13; PgID 6356.) Defendants Schneider and Jagielski did not "seize" Plaintiff until Schneider's PIT maneuver stopped his car. This seizure occurred after Beard had been driving at excessive speeds and, as a jury found, fleeing and eluding the police. By law, and as this Court determined at summary judgment, Beard had no factual basis to support his claim the he experienced an unlawful seizure, since by the time the seizure occurred Beard had clearly broken several laws including eluding the police. Similarly Plaintiff's excessive force claim as pertained to the PIT maneuver and the car chase was also without merit. In *Scott v. Harris*, 550 U.S. 372 (2007), the Supreme Court held "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Id.* at 386. The Supreme Court's holding in *Scott*, made Plaintiff's excessive force claim as pertained to the car chase and as originally conceived, legally and factually impossible.

These two counts are similar to the frivolous claim brought by a plaintiff in *Wolfe v. Perry*, 412 F.3d 707, 721 (6th Cir. 2005). In *Wolfe*, the plaintiff filed a Fourth Amendment rights complaint alleging the police illegally search his home. *Ia.* at 721. The plaintiff later

7

admitted that he did not own or reside in the home in question; rather it belonged to his parents something known to him at the time he filed his complaint. *Id.* at 709. Plaintiff's admission made it clear that his complaint was based on a set of untrue facts, defective from the outset, and his complaint was dismissed at the summary judgment stage. *Id.* The Sixth Circuit affirmed the district court's decision to award attorney fees to the prevailing defendant in *Wolfe* because the plaintiff's claims "were frivolous and lacked factual support." *Id.* at 722. The Sixth Circuit held, only egregious instances where plaintiff's claims were clearly defective at the outset of the case warrant an award of attorney fees to a prevailing defendant.

In *Wolfe* the plaintiff knew from the beginning the facts would not and could not prove the necessary elements for his claim. Here too Plaintiff did not, and could not present any evidence to make his claims legally appropriate. In *Wolfe*, the plaintiff knew that the search occurred at his parents' home and that he had no legal right to privacy in their home. Similarly, here, Beard knew, or should have known, the police had a right to seize him after he led them on a car chase, and that the law gave the police the authority to end dangerous car chases, including using a potentially dangerous move like the PIT maneuver. Plaintiff knew these dispositive facts at the time he instituted his civil rights complaint. The Sixth Circuit held in *Wolfe* attorney fees were appropriate because from the start, the plaintiff's claims were clearly defective. Here too, the Court finds from the outset, Beard's unlawful seizure claim, and excessive force as pertained to the PIT maneuver, were clearly defective. The Court does not suggest that Beard, who has had a legal guardian since 2001, himself is at fault. However, between his mother Ford, and his counsel, Attorney Hawkins, these two claims should never have been filed.

3. Award

Of the 1,432.7 hours Defendants invested in this case, only a small portion of that time was expended in defense of the two frivolous claims. For example, Defendants filed an eighty-five page brief in support of their motion for partial summary judgment which included forty-six pages of legal analysis. Approximately fourteen of those pages were devoted to the unlawful seizure claim and the excessive force claim as pertained to the PIT maneuver and the car chase. Although Plaintiff filed two frivolous claims against Defendants, the overwhelming majority of the resources that Defendants devoted to defending the case were expended on the non-frivolous claims. Thus, the Court awards Defendant twenty hours of attorney fees. This is based on a reasonable amount of attorney time to research the status of these two claims and a portion of the hours Defendant spent working on the motion for partial summary judgment which resulted in the two frivolous claims being dismissed. Since the Court concludes that the other of Plaintiff's claims were reasonable, Defendants' motion for attorney fees and costs pursuant to § 1988, for the remainder of the proceedings is denied.

Defense counsel billed Defendants at a rate of $150 per hour. In the Court's previous award of sanction, the Court held a $50 per hour enhancement was justified because of the obstructive conduct that prolonged resolution of that motion for sanctions. (Dkt. 187, at 12; PgID 6479.) No such obstructive conduct is at issue here. The Court therefore determines counsel's hourly rate without the $50 enhancement is appropriate. As a rate of $150 per hour for twenty hours, this entitles Defendants to $3,000 in attorney fees. Defendant's motion for costs beyond the bill of costs submitted to the clerk of the court is denied.

III.   **Defendants' Motion for Sanctions**

1. Background

Defendants filed two motions for sanctions against Ford, one filed at the start of trial and the second now seeking to enforce sanctions against Ford and adding complaints about her behavior during the trial itself. (Dkt. 208 & 212.) Although Plaintiff has been represented by counsel, Ford represents herself in these motions for sanctions. She does not have the benefit of counsel.

On December 4, 2017, the day before the start of trial, Ford attempted to serve the City of Southfield's City Attorney Sue Ward ("Ward") a 52 page, three part document ("Ford Document"). Defendants provided the Court with a copy of the Ford Document, which they received from Ward. (Ford's Document, Dkt. 208-2; PgID 6907-58.) The document consists of a citizen's complaint against the Southfield police officer Schneider, Chief Hawkins, and against Defendants' attorneys Joseph Seward, and Kali Henderson, alleging they filed a false police report against Ford and otherwise conspired against her. (Dkt. 208-2, at 2; PgID 6907.) Second, the document includes a two-page letter in which Ford claims to have evidence that Defendants' attorneys[2] are corrupt and "scammed the taxpayers." (Dkt. 208-2, at 3-4; PgID 6908-09.) Finally, the document contains a 49 page, train of thought Ford affidavit.

In the Ford Document, Ford expresses a deep sense of injustice as to how both defense counsel and the Southfield police have treated her and her son. In free-form, Ford makes numerous unsubstantiated accusations against the defenses' legal team and the Southfield police department, as well as the individual officers involved in the case. Ford

---

[2]The letter names Joseph Seward and Kali Henderson by name.

also offers her own favorable view of the evidence related to this matter, and asserts there is a conspiracy against her. (Dkt. 208-2, at 5-53; 6910-58.) While the document jumps from topic to topic, there are no threats within the document, and it contains numerous pleas for integrity, truth, and justice.

The Ford Document references and responds to an Oakland County investigation into Ford, pertaining to a series of voicemails Defendant Schneider received on her personal cell phone. The voicemails threatened Defendant Schneider's life should she return to work. Defendant Schneider shared the voicemails with defense counsel who states the voice "sounded extremely similar to Ms. Ford." (Dkt. 208, at 7; PgID 6899.) Defendant Schneider then shared the threatening voicemails with the Oakland County Sheriff's Department which led to an investigation of Ford. To the Court's knowledge the Oakland County Sheriff did not charge Ford and no direct evidence has been offered to connect Ford with the voicemails. In the Ford Document, Ford insists she did not make these calls and that Defendant Schneider conspired with defense counsel to file a false report against her. (Ford Document, Dkt. 208-2, at 15; PgID 6920.)

Also on the eve of trial, Ford requested to appear before the Southfield City Council. The council included her on their agenda however Defense counsel contacted Plaintiff's counsel to encourage her not to attend. Ford did not appear at the council meeting.

Finally, Defendants' motions for sanctions reference Ford's other past conduct. This includes Ford's behavior during discovery which already resulted in her receiving sanctions which prevented her from testifying in Plaintiff's case in chief. (Dkt. 155.) The most recent motion also states Ford was disruptive throughout the trial, behavior Defendants describe as intimidating. Defendants claim Ford stated she would "get their lying asses" before

exiting the courtroom after the reading of the jury's verdict. (Dkt. 212, at 7-8; PgID 6978-79.)

On April 24, 2018, the day before the motion hearing, Ford filed a late response to the Defendants' motions for sanctions. Under Local Rules 7.1(e)(2)(B) "[a] response to a nondispositive motion must be filed within 14 days after service of the motion." Defendants filed their original motion for sanctions on December 5, 2017 (Dkt. 208) and their subsequent motion for enforcement of sanctions on February 1, 2018 (Dkt. 212). Ford's response which came almost two months later, falls well outside the 14 day time frame and the Court need not consider its contents. Nonetheless, the Court reviewed Ford's 25 page response. Ford again expresses great frustration with the Defense attorneys and the many perceived injustices surrounding this case. Ford confirms many of the details of the interactions which occurred at the City Attorney's office on December 4, 2017. Ford's response additionally makes many unsupported accusations including terrorism and conspiracy to interfere against Defendants' counsel. Ford does not make a cogent legal response to Plaintiff's motion for sanctions.

2. Legal Standard - Sanctions

Defendants' motions seek sanctions against Ford for behavior they state is both improper and tantamount to witness tampering in violation of 18 U.S.C. § 1512 Tampering with a Witness, Victim, or Informant and pursuant to 42 U.S.C. §1985 Conspiracy to Interfere with Civil Rights. The Court agrees, that Ford's behavior before, during, and even after trial, was disruptive and improper. Neither statute however provides a proper avenue for sanctioning Ford's conduct described here. Moreover, the Court does not wish to use

its inherent power to sanction Ford, beyond the verbal admonishments the Court already gave Ford during the trial.

Tampering with a Witness, Victim, or Informant under 18 U.S.C. § 1512 is a federal criminal statute which provides in relevant part:

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to -
>
> (1) influence, delay, or prevent the testimony of any person in an official proceedings
>
> ...
>
> shall be fined under this title or imprisoned not more than 20 years, or both
>
> ...
>
> (d) whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from -
>
> (1) attending or testifying in an official proceedings
>
> ...
>
> or attempts to do so, shall be fined under this title or imprisoned not more than 3 years.
>
> (e)  In a prosecution for an offense under this section, it is an affirmative defense, as to which the defendant has the burden of proof by a preponderance of the evidence, that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully.

18 U.S.C. § 1512.

Defendants do not explain how Ford's letter, delivered to Ward, resulted in Defendants' intimidation.  Defendants' motion bolds the words "intimidating a party,"

however the City of Southfield was no longer a party to the lawsuit[3] and the five remaining police officers, who were still parties to the lawsuit on December 4, 2017 when Ford allegedly delivered the Ford Document, were not present for that interaction.[4]

Ford's misguided attempt to report Defendants and Defendants' counsel to Ward, who could potentially take legal actions against them but only for illegal behavior, does not amount to intimidation, threat, nor an attempt to persuade as required under § 1512(b). Potentially such actions could be qualified as harassment under § 1512(d), however, delivery of the Ford Document would not "hinder[], delay[], prevent[] or dissuade[]" Defendants from testifying as they were not the recipients. 18 U.S.C. § 1512(d). Moreover, seeking help from the city attorney, a legal authority is not an action meant to persuade the witnesses to speak falsely. Taking all of Defendants claimed facts of Ford's behavior as true, Defendants have not adequately demonstrated how Ford's actions as described violate 18 U.S.C. § 1512.

In addition, although Ford has not invoked the affirmative defense available pursuant to 18 U.S.C. § 1512(e), her actions potentially meet that standard. She delivered a letter to Ward, which is lawful conduct, and her intention, as stated in the Ford Document is to have the Defendants testify truthfully. Her version of what constitutes the truth does not match Defendants' version, however, the Ford Document's intent, although perhaps not its

---

[3] On January 29, 2017, the City of Southfield received Summary Judgment and was dismissed from the case. (Dkt. 173.)

[4] The document Ford presented to Ward is not a filing within this lawsuit and does not violate the Federal Rule of Civil Procedure 5(b) as Defendants claim. (Dkt. 208, at 10; PgID 6902.)

14

sole intent, is "to encourage, induce, or cause the other person to testify truthfully" as required by the statute. 18 U.S.C. § 1512(e).

Defendants cite *Alvarado v. Oakland Cty.*, No. 09-CV-14312, 2011 WL 1135458 (E.D. Mich. Jan. 24, 2011), *report and recommendation adopted*, 2011 WL 1157867 (E.D. Mich. Mar. 28, 2011) in support of their use of 18 U.S.C. § 1512 to secure sanction. However, the *Alvarado* court denied sanctions where the individual could not be said to have violated 18 U.S.C. § 1512. There the individual attempted to directly contact one of the plaintiff's testifying witnesses but because the individual's intent, while similarly misguided, was not to intimidate, harass, threaten, or persuade the expert witness and because no actual contact was made, the court determined sanctions were inappropriate. *Id.* Ford is similar to the *Alvarado* case in that her actions, while certainly unwise given the state of their ongoing case, never resulted in contact with a testifying witness and her stated intent was not to intimidate, harass, or threaten. Just as the *Alvarado* court denied sanctions under 18 U.S.C. § 1512, so too does this Court.

Defendants also assert sanctions are appropriate pursuant to 42 U.S.C. §1985 Conspiracy to Interfere with Civil Rights, which states in relevant part:

> (2)   If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully. . . or if two or more persons conspire for the purpose of impeding, hindering, obstruction, or defeating, in any manner, the due course of justice. . . .with intent to deny to any citizen the equal protection of the laws. . . .
>
> (3) . . . .the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

15

42 U.S.C. §1985. This argument, suffers the same problems as the last, namely that Ford did not contact Defendants, she made contact with an officer of the court, and that her stated intent was not to intimidate, threaten, or impede Defendants testimony. Defendants additionally make no claims that Ford has a co-conspirator. However misguided Ford's possible actions were on the eve of the trial, 42 U.S.C. §1985 does not apply.

The Court has an inherent authority to sanction unethical, obstructive or violative conduct in litigation, even absent bad faith. *First Bank v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 519-20 (6th Cir. 2002); *Telechron Inc. v. Intergraph Corp.*, 91 F.3d 144, 1996 WL 370136 (6th Cir. July 2, 1996) (unpublished). "[A] court's reliance upon its inherent authority to sanction derives from its equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *First Bank*, 307 F.3d at 512. This broad discretion permits the Court to fashion an appropriate sanction for misconduct, including the assessment of attorney fees. *Id*, at 512 n.7 (citing *Chambers v. NASCO, Inc.*, 501 U.S.32 (1991)). Ford's actions on the eve of trial and her observed behavior during the course of the proceedings is unadvisable and even problematic. The Court however is satisfied with the admonishments it offered Ford during the course of the trial. The Court here finds that the sanctions sought by Defendants are not appropriate under the circumstances of this motion.

**IV. Defendants' Motion to Enforce Sanctions Against Attorney Hawkins**

The Court ordered $18,455.48 in sanctions against Attorney Hawkins on June 14, 2017, for his conduct during discovery. (Dkt. 188.) Attorney Hawkins' misconduct included but was not limited to: (1) violating the certification requirements of Federal Rule of Civil Procedure 26(g); (2) raising a frivolous privilege objection; (3) filing a misleading response

to a motion to compel; (4) failing to present material at a deposition; and (5) failing to reveal that Ford withheld documents from production until pressed by the Court. (Dkt. 155, at 2; PgID 6196.) The Court already determined Attorney Hawkins violated Rule 26(g) and demonstrated a lack of care with respect to the requirements of Rule 34(b). The Court issued sanctions for his violative conduct and his lack of candor during discovery pursuant to Rule 26(g), Rule 37, and under the Court's inherent authority.[5] (Dkt. 155.)

Defendants' bring their current Motion to Enforce Sanctions because Attorney Hawkins has not yet paid any portion of the $18,455.48 in sanctions. (Dkt. 212, at 8.) Attorney Hawkins responds he intends to make the payments. He asks the Court to reconsider the original sanctioned amount "seeing that it has now had a personal opportunity to witness all of the efforts that I put into trying to resolve the cases, as well as control the overall general disposition and behavior of my clients." (Dkt. 218, at 9; PgID 7202.) Attorney Hawkins asks in the alternative that he be given more time to pay the sanctions, because he is a "small, solo-practitioner, with limited monthly income" (Dkt. 218, at 10; PgID 7203.)

The Court will not reduce the amount owing. The Federal Rule of Civil Procedure 60(b) provides that a court may relieve a party or its legal representative from a final judgment for (1) mistake, (2) newly discovered evidence, (3) fraud, (4) the judgment is void, (5) the judgment has been satisfied, or (6) any other reason that justifies relief. Fed.R.Civ.P. 60(b). Attorney Hawkins has made none of these arguments. Instead he relies on the same argument he already raised at the time the sanctions were originally

---

[5] The Court had no involvement in the pending attorney grievance against Attorney Hawkins that originated from this case.

17

under consideration, that his client is difficult. Attorney Hawkins was assessed only half of the reasonable expenses associated with litigating the motion for sanctions because the Court already acknowledged Ford's conduct was the primary cause. The Court will not now change that determination.

The Court recognizes that Attorney Hawkins is a small, solo-practitioner, however he has also already delayed payment for ten months. Attorney Hawkins' stated hope that the case would settle or resolve in Plaintiff's favor and that he would have been able to pay the sanctions out of his "reasonable earned attorney fees" is not availing. (Dkt. 218, at 8; PgID 7201.) A further delay is unreasonable.

The Court orders Attorney Hawkins to negotiate a payment plan with Defendants which facilitates full payment no less than six months, up to a year, from the date of this judgment.

**V.   Conclusion**

For the reasons set forth above, it is hereby ordered that:

Defendants' motion for attorney fees [214] is GRANTED in part as to $3,000, and DENIED in part as to the remainder of the requested attorney fees.

Defendants' motion for additional sanctions against Johnette Ford [208] is DENIED;

Defendants' motion to enforce sanctions against Attorney Hawkins [212] is GRANTED;

SO ORDERED.

Dated: May 21, 2018      s/Nancy G. Edmunds
                         Nancy G. Edmunds
                         United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 21, 2018, by electronic and/or ordinary mail.

            <u>s/Lisa Bartlett</u>
            Case Manager